BRYAN H. HECKENLIVELY (State Bar No. 279140)
Bryan.Heckenlively@mto.com
JOHN B. MAJOR (State Bar No. 306416)
John.Major@mto.com
JING JIN (State Bar No. 343210)
Jing.Jin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

CHARLES F. ROBINSON (State Bar No. 113197)
RHONDA GOLDSTEIN (State Bar No. 250387)
KATHARINE ESSICK (State Bar No. 219426)
Katharine.Essick@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-9800
Telephone:      (510) 987-9800
Facsimile:      (510) 987-9757

Attorneys for Defendants

* Additional counsel listed on following page.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| JOHN D. HALTIGAN,<br><br>       Plaintiff,<br><br>    vs.<br><br>MICHAEL V. DRAKE, in his official capacity as President of the University of California; CYNTHIA K. LARIVE, in her official capacity as Chancellor of UC Santa Cruz; BENJAMIN C. STORM, in his official capacity as Chair of the UC Santa Cruz Psychology Department; and KATHARYNE MITCHELL, in her official capacity as Dean of the UC Santa Cruz Division of Social Sciences,<br><br>       Defendants. | Case No. 5:23-cv-02437-EJD<br><br>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:    Hon. Edward J. Davila<br><br>Date:     October 12, 2023<br>Time:     9:00 a.m.<br>Courtroom: 4 |

HELEN E. WHITE (*pro hac vice forthcoming*)
Helen.White@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave NW, Ste. 500E
Washington, District of Columbia 20001-5369
Telephone:      (202) 220-1136
Facsimile:       (202) 220-2300

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

STATEMENT OF RELIEF SOUGHT ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION...................................................................................................1

II.     PLAINTIFF'S ALLEGATIONS...........................................................................3

        A.      The University of California's Commitment to Diversity and Inclusion..................3

        B.      UC Santa Cruz's Use of Diversity, Equity, and Inclusion Statements for
                Hiring Department of Psychology Faculty..........................................................3

        C.      Plaintiff's Decision Not to Apply for a Position at UC Santa Cruz ........................5

III.    LEGAL STANDARD ............................................................................................6

IV.     ARGUMENT ..........................................................................................................7

        A.      All Claims Should Be Dismissed Because Plaintiff Lacks Standing........................7

                1.      Plaintiff Has Not Alleged Any Injury in Fact .................................7

                2.      Plaintiff Has Not Alleged an Injury Caused by the DEI Statement
                        Requirement ............................................................................10

        B.      Plaintiff Fails to State a First Amendment Viewpoint Discrimination Claim .........12

                1.      The DEI Statement Requirement Does Not Implicate Protected
                        Speech. ...................................................................................12

                        (a)      The DEI Statement Is Not Protected Speech Under *Garcetti* ..........13

                        (b)      Plaintiff Cannot Avoid *Garcetti* by Claiming the DEI
                                 Statement Requirement Relates to Academic Writing....................16

                2.      Plaintiff Has Not Alleged Any Adverse Employment Action ....................17

                3.      Plaintiff Has Failed to Plausibly Allege that Any Viewpoint of His
                        Was a "Substantial or Motivating Factor" for Any Adverse
                        Employment Action. ..................................................................18

        C.      Plaintiff Fails to State a Claim for Unconstitutionally Compelled Speech
                Under the First Amendment ..........................................................................22

V.      CONCLUSION .....................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Am. Fed'n of Teachers v. DeVos*,
    484 F. Supp. 3d 731 (N.D. Cal. 2020) .......................................................................6

*Am. Legion v. Am. Humanist Ass'n*,
    139 S. Ct. 2067 (2019) ...............................................................................................7

*Ark. Educ. Television Comm'n v. Forbes*,
    523 U.S. 666 (1998) .................................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................19

*Bonds v. Milwaukee Cnty.*,
    207 F.3d 969 (7th Cir. 2000) ...............................................................................13, 14

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991) ...................................................................................9

*Bradley v. T-Mobile US, Inc.*,
    No. 17-cv-07232, 2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ............................11

*Buxton v. Kurtinitis*,
    862 F.3d 423 (4th Cir. 2017) ...................................................................................14

*Carney v. Adams*,
    141 S. Ct. 493 (2020) .................................................................................................9

*Carroll v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003) ...................................................................................11

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ...................................................................................23

*Coszalter v. City of Salem*,
    320 F.3d 968 (9th Cir. 2003) ...............................................................................12, 17

*Demers v. Austin*,
    746 F.3d 402 (9th Cir. 2014) ...............................................................................12, 16

*Dragovich v. U.S. Dep't of the Treasury*,
   764 F. Supp. 2d 1178 (N.D. Cal. 2011) ....................................................................8

*Dunnet Bay Constr. Co. v. Borggren*,
   799 F.3d 676 (7th Cir. 2015)................................................................................11

*Friery v. L.A. Unified Sch. Dist.*,
   448 F.3d 1146 (9th Cir. 2006) ......................................................................8, 9, 10

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ................................................................................... passim

*Gutowsky v. Cnty. Of Placer*,
   108 F.3d 256 (9th Cir. 1997).................................................................................9

*Hubbard v. EPA*,
   949 F.2d 453 (D.C. Cir. 1991) ......................................................................13, 14

*Keeton v. Anderson-Wiley*,
   664 F.3d 865 (11th Cir. 2011)......................................................................14, 22

*Klaassen v. Trs. of Ind. Univ.*,
   7 F.4th 592 (7th Cir. 2021)..................................................................................22

*Kortan v. Cal. Youth Auth.*,
   217 F.3d 1104 (9th Cir. 2000).............................................................................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................7, 8, 10

*Lyons v. England*,
   307 F.3d 1092 (9th Cir. 2002)......................................................................17, 18

*Madsen v. Boise State Univ.*,
   976 F.2d 1219 (9th Cir. 1992)...............................................................................8

*Matal v. Tam*,
   582 U.S. 218 (2017) .......................................................................................1, 13

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998)......................................................................................13, 14

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012)...............................................................................11

*Oyama v. Univ. of Haw.*,
   813 F.3d 850 (9th Cir. 2015)........................................................................12, 14

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013)......................................................................11, 15

MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Porter v. Bd. of Trs. of N.C. State Univ.*,
   72 F.4th 573 (4th Cir. 2023) .................................................................................16

*Regents of Univ. of Mich. v. Ewing*,
   474 U.S. 214 (1985) .....................................................................................1, 13

*Riley v. Nat'l Fed. of the Blind of N.C., Inc.*,
   487 U.S. 781 (1988) ...........................................................................................22

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...............................................................................7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   143 S. Ct. 2141 (2023) .........................................................................15, 16, 19

*Sullivan v. Univ. of Wash.*,
   60 F.4th 574 (9th Cir. 2023) ................................................................................16

*Taniguchi v. Schultz*,
   303 F.3d 950 (9th Cir. 2002) .................................................................................9

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ..........................................................................................7

*Turner v. City & Cnty. of S.F.*,
   788 F.3d 1206 (9th Cir. 2015) .............................................................................12

*United States v. Am. Library Ass'n, Inc.*,
   539 U.S. 194 (2003) ............................................................................................14

*Villa v. Maricopa Cnty.*,
   865 F.3d 1224 (9th Cir. 2017) .............................................................................10

*W. Marine Prods., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   572 F. Supp. 3d 841 (N.D. Cal. 2021) ...................................................................6

*Washington Env't Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) .............................................................................11

*Wetherbe v. Smith*,
   593 F. App'x 323 (5th Cir. 2014) .................................................................. passim

*Wolfe v. Strankman*,
   392 F.3d 358 (9thCir. 2004) ..................................................................................7

*Worrell v. Henry*,
   219 F.3d 1197 (10th Cir. 2000) .....................................................................13, 14

**FEDERAL STATUTES**

20 U.S.C. § 1681(a)..........................................................................................................21

42 U.S.C. § 12132 ...........................................................................................................21

**FEDERAL RULES**

Fed. R. Civ. Proc. 12(b) .................................................................................................1, 6

**CONSTITUTIONAL PROVISIONS**

U.S. Const., amend. I, cl. 2........................................................................... passim

**OTHER AUTHORITIES**

Brian Soucek, *Diversity Statements*, 55 U.C. Davis L. Rev. 1989, 2019 (2022)............................20

1    **PLEASE TAKE NOTICE** that on October 12, 2023 at 9:00 a.m. before the Honorable

2    Edward J. Davila, in Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113,

3    Defendants will and hereby do move for an order dismissing Plaintiff's First Amended Complaint

4    with prejudice.  This Motion is based on this Notice of Motion and Memorandum of Points and

5    Authorities, all papers on file, and any authority or argument presented in the reply and at any

6    hearing.

7    <u>**STATEMENT OF RELIEF SOUGHT**</u>

8    Defendants seek an order dismissing with prejudice all claims in the First Amended

9    Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

10   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

11   **I.      <u>INTRODUCTION</u>**

12   The University of California ("UC") is committed to excellence and equity in every facet of

13   its mission.  To further both of those goals, UC's Santa Cruz campus has long evaluated faculty

14   contributions to equal opportunity and diversity when making hiring and promotion decisions, just

15   as it evaluates contributions in the areas of research and teaching.  UC Santa Cruz (sometimes

16   referred to as "UCSC" or "the University") accordingly requires faculty applicants to submit

17   statements discussing their past and planned future contributions to diversity, equity, and inclusion

18   ("DEI") efforts alongside other application materials, such as their expected contributions to cutting-

19   edge research in their field.  The University's decision on that score is just one aspect of the

20   University's broader academic freedom to establish and maintain—including through hiring

21   decisions—institutional viewpoints that guide its actions.  The Supreme Court has long recognized

22   that public universities *as institutions* require a degree of "academic freedom"—rooted in the First

23   Amendment—to carry out their missions.  *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226

24   (1985).  The Supreme Court has further recognized that whenever a university "embarks on a course

25   of action, it necessarily takes a particular viewpoint," so "imposing a requirement of viewpoint-

26   neutrality on government speech would be paralyzing."  *Matal v. Tam*, 582 U.S. 218, 234 (2017).

27   Thus, the First Amendment protects the University's determination that hiring faculty who are able

28

to foster a diverse, equitable, and inclusive environment is essential to its core mission of providing an excellent education to its richly diverse student body.

Plaintiff John D. Haltigan asks this Court to subvert these fundamental First Amendment principles. Plaintiff alleges that he is an unemployed psychology Ph.D. Plaintiff does not allege that he has actually applied for or is qualified for any open position at UC Santa Cruz. Nonetheless, in his First Amended Complaint ("FAC"), he asks this Court to enjoin and declare unlawful UC Santa Cruz's use of DEI statements in faculty hiring on the ground that it violates his Free Speech rights. In doing so, he asks this Court to force the University to embrace *his personal views* about what a public university's mission should be and how best to achieve it. The Court should not do so, and Plaintiff's claims should be dismissed for lack of standing and failure to state a claim on the merits.

*First*, Plaintiff lacks standing because he has no legally cognizable interest in UC Santa Cruz's use of DEI statements. Plaintiff does not allege that he has applied for a job at UC Santa Cruz in recent years or that he has ever been required to submit a DEI statement to UC Santa Cruz. Nor does he allege that he will be required to submit a DEI statement in the future, as he does not allege (and cannot plausibly allege) that UC Santa Cruz is recruiting or will soon recruit for a position in which he is interested and for which he is qualified. He therefore does not allege (i) a "particularized" or "concrete" injury, much less one that (ii) is "actual or imminent," or that (iii) is fairly traceable to UC Santa Cruz's decision to require a DEI statement by those who actually apply for faculty positions—and he would have had to allege all three of the above to establish standing.

*Second*, Plaintiff's claims fail on the merits because he does not allege any constitutionally protected speech. Under *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), speech by public employees "pursuant to their official duties" is not protected by the First Amendment. And appellate decisions have uniformly extended that principle to applicants for public employee positions, i.e., the First Amendment does not protect statements that such applicants make related to their ability to carry out the official duties of the position they seek. *See, e.g.*, *Wetherbe v. Smith*, 593 F. App'x 323, 329 (5th Cir. 2014). To hold otherwise in this case would deprive UC Santa Cruz of the ability to select employees who – as determined via the exercise of the University's discretion – are best

able to carry out the University's mission.  The Supreme Court and the Ninth Circuit Court of Appeals have made clear that a public institution such as the University may exercise its academic freedom by developing institutional viewpoints.  Plaintiff's claims also fail on the merits for two other independently sufficient reasons: he has not alleged an adverse employment action, and he has not alleged that his viewpoint was a substantial or motivating factor for any decision or action by Defendants.

Fundamentally, Plaintiff's personal disagreement with DEI statements does not give him a basis to enjoin UC Santa Cruz from using them.  His claims should be dismissed with prejudice based on these multiple, independent grounds, none of which can be cured by further amendment.

## II.      PLAINTIFF'S ALLEGATIONS

### A.       The University of California's Commitment to Diversity and Inclusion

The University of California system ("UC") has long been committed to ensuring that members of its faculty will be able to teach and advocate for its richly diverse student body.  *See* FAC ¶¶ 12–13.  In 2005, UC added a section to its Academic Personnel Manual (which provides policies relating to UC faculty) that encouraged faculty to promote "diversity and equal opportunity." *Id.* ¶ 13.  This section was designed to reward faculty for promoting equal opportunity and diversity by including those efforts in faculty evaluations for hiring and promotion, but those criteria did not "displace or substitute" other important criteria.  *Id.*  Plaintiff alleges that, as UC Santa Cruz began considering these efforts as part of faculty evaluations, it also began asking faculty applicants in the Psychology Department to write statements explaining how they have advanced diversity and equal opportunity in their prior jobs and how they would continue to do so in their role as UC faculty.  *Id.* ¶ 14.

### B.       UC Santa Cruz's Use of Diversity, Equity, and Inclusion Statements for Hiring Department of Psychology Faculty

In the years that followed, the Psychology Department UC Santa Cruz began requiring that DEI statements be considered as part of the first round of review of applications alongside a faculty applicant's research statement.  *See id.* ¶¶ 29–33, 68.  Plaintiff does not allege, though, that the DEI statement has been disqualifying or otherwise dispositive in any Psychology faculty  search at UC

Santa Cruz (or any other department or UC campus).  To guide the review of DEI statements, UC Santa Cruz "provides prospective applicants" with "detailed rubrics and guidelines" regarding the evaluation of DEI statements.  *See id.* ¶¶ 34, 36.  DEI statements are evaluated in three categories: "awareness, experience, and future plans at UC Santa Cruz."  *Id.* ¶ 39.  Plaintiff does not quote from or otherwise make any specific allegations regarding the contents of the rubric.  Instead, Plaintiff alleges that various UC and UC Santa Cruz websites discuss and define terms like "diversity," "equity" and "inclusion."  Plaintiff does not quote from or otherwise make specific allegations about the substance of these definitions, but instead he alleges that they describe "diversity" as including "hiring and promoting individuals from specific racial and ethnic groups," *id.* ¶ 37, and "define the terms 'diversity,' 'equity,' and 'inclusion' in a specific manner that ensures successful applicants adhere to a particular ideology and worldview," *id.* ¶ 38.  Plaintiff separately alleges that the UC Santa Cruz Psychology Department maintains its own webpage concerning its DEI activities and that that page "embraces without reservation numerous controversial political and ideological perspectives."  *Id.* ¶ 51.  Plaintiff does not make any specific allegations regarding how diversity statements are used in connection with positions within the UC Santa Cruz Psychology Department or in connection with any position to which he might someday apply.

With respect to the rubric itself, Plaintiff alleges that the "awareness" category evaluates "[i]deas and beliefs that applicants are supposed to convey."  *Id.* ¶ 40.  Plaintiff does not quote or allege with any greater particularity the substance of the criteria contained in the awareness portion of the rubric.  Plaintiff alleges that "[e]xperience and future plans"—the other two rubric categories—"are evaluated based on an applicant's past or planned contributions to diversity, equity, and inclusion in teaching, research and professional work, and service and professional activities."  *Id.* ¶ 41.  Plaintiff alleges that the "activities and contributions applicants are asked to discuss are thinly veiled proxies for particular beliefs that the administration favors."  *Id.*  Plaintiff alleges that the rubric reserves "high scores . . . for those who promise to adhere to a specific world view that requires treating individuals differently according to race" and applicants who believe "race and sex should not be used to judge individuals" receive low scores under the rubric.  *Id.* ¶¶ 45–46. Plaintiff alleges that the criteria used in the DEI statements "have nothing to do with the University's mission,

the qualifications for any given tenure-track position, or professional standards for academics." *Id.* ¶ 54.  The DEI statement requirement, Plaintiff alleges, "has the intent and the effect of driving contrary ideas and viewpoints out of the marketplace of academic hiring." *Id.* ¶ 57.

### C.      Plaintiff's Decision Not to Apply for a Position at UC Santa Cruz

Plaintiff vaguely claims that he is impacted by the DEI statement requirement because he is "qualified for employment in the Psychology Department at UC Santa Cruz" and "desires a position," without reference to any position in particular. *Id.* ¶¶ 7, 69.  But Plaintiff does not allege that he has in recent years applied for a position at UC Santa Cruz.  Nor does he allege that a position in which he would be interested and for which he would be qualified will open in the near future.

Instead, Plaintiff provides what he claims is "one example of how the DEI statement Policy is applied in practice," based on a July 21, 2022 job posting for a "tenure-track position in Developmental Psychology." *Id.* ¶ 66.  As part of that job posting, the UC Santa Cruz Psychology Department required candidates to submit a DEI statement as part of their application. *Id.* ¶ 67. Those statements, along with research statements detailing the candidates' areas of academic research and expertise, were evaluated as part of the initial round of application review. *Id.* ¶ 68. Plaintiff does not allege that this position was open when he filed his amended complaint, nearly a year after it was posted (nor could he, as it has been filled).[1]  *See id.* ¶¶ 66–70.  Nor does he make any allegation that another job in which he would be interested and for which he would be qualified will open in the near future. *See id.*

Plaintiff is not currently employed in academia. *See id.* ¶¶ 60, 65.  Though he has applied to other universities with DEI requirements that he alleges are "less stringent" than UC Santa Cruz's, he evidently has not secured employment anywhere in the academy. *See id.* ¶ 65.  Although he

---

[1] Plaintiff's original complaint alleged that the July 21, 2022 position remained an "open position" and sought preliminary injunctive relief to allow Plaintiff to apply without submitting a DEI statement. *See* Complaint, Dkt. 1, ¶ 7, Request for Relief.  Plaintiff's Amended Complaint omits any allegation that this position remains open and instead references that posting as an "example."

alleges that he "desires a position at the University," *id.* ¶ 69, and has "applied to [UC Santa Cruz] in the past," *id.* ¶ 7, he did not apply to the position posted in 2022, *see id.* ¶ 70.  He alleges that, because of his belief in "'colorblind inclusivity,' 'viewpoint diversity' and 'merit-based evaluation' alone," his "application for this or any future opening" would be "futile" in light of the required DEI statement.  *Id.* ¶¶ 69–70.  Plaintiff also alleges that he has "experience teaching and mentoring students from all backgrounds."  *Id.* ¶ 63.  Plaintiff makes no allegations regarding the contents of his research statement, which is the other element of the application reviewed as part of the initial screening process.  *See id.* ¶¶ 66–70.  Plaintiff also does not allege that the DEI statement requirement had any effect on the outcome of the hiring process to fill the Developmental Psychology position he references as an "example."  *See id.*

Plaintiff does not allege that there is or will soon be any open position for which he would be qualified.  *See id.*  Instead, he seeks broad permanent injunctive relief against the DEI Statement Requirement without reference to any particular position.  *Id.* at p. 12 (Request for Relief).

### III.   **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *W. Marine Prods., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 572 F. Supp. 3d 841, 847 (N.D. Cal. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In evaluating the complaint, "the court must accept as true all 'well pleaded factual allegations' and determine whether the allegations 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Though courts "must also construe the alleged facts in the light most favorable to the plaintiff," they are "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

By contrast, a motion to dismiss under Rule 12(b)(1) challenges the plaintiff's "showing of subject-matter jurisdiction."  *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020).  "A defendant may either challenge jurisdiction 'facially' by arguing the complaint 'on its face' lacks jurisdiction or 'factually' by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction on the facts of the case."  *Id.* (quoting *Wolfe v. Strankman*,

392 F.3d 358, 362 (9th Cir. 2004) and *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," *Safe Air*, 373 F.3d at 1039, and the pleading standard applicable under Rule 12(b)(6) governs, *Wolfe*, 392 F.3d at 362.

## IV.   **ARGUMENT**

### A.   **All Claims Should Be Dismissed Because Plaintiff Lacks Standing**

The Court lacks subject-matter jurisdiction over Plaintiff's claims because Plaintiff does not have Article III standing to bring them.  To survive a facial attack on standing at the motion to dismiss stage, a plaintiff's complaint must plausibly allege "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Because Plaintiff has not plausibly alleged any legally cognizable injury or the requisite causal relationship, this case does not present the kind of "real controversy with real impact on real persons" that this Court has jurisdiction to resolve.  *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019).

#### 1.   *Plaintiff Has Not Alleged Any Injury in Fact*

Courts may hear only claims based on "injur[ies] in fact"—i.e., "an invasion of a legally protected interest which is" (1) "actual or imminent, not conjectural or hypothetical" and (2) "concrete and particularized." *Lujan*, 504 U.S. at 560 (cleaned up).  Plaintiff's asserted injury fails on both fronts—either of which would independently warrant dismissal.

First, his alleged injury is not "imminent" (much less "actual").  There is no standing when a claim is based on "'some day intentions'" to take an action that could result in an injury "without any description of concrete plans, or indeed even any specification of *when* the some day will be." *Id.* at 563-64 (affidavits stating that plaintiffs would "in the future" visit habitats that would be damaged by the challenged conduct did not demonstrate injury in fact).

Plaintiff's allegations here are based on exactly that sort of "some day intentions."  Plaintiff does not allege that he is soon planning to apply for a position at UC Santa Cruz or that a position

will soon become available.  He also does not allege that any position that will come up in the near future will be one in which he is interested and for which he will be qualified (nor could he without knowing the specifics of the position).  Instead, he merely alleges that "*[i]f [he] were to apply*" to such a position—without any indication of when that might be, much less that it is "imminent"—he would be required to submit a DEI statement. FAC ¶ 70 (emphasis added).  That is not enough to establish the "concrete plans" and "specification of *when* some day will be" required for standing. *Lujan*, 504 U.S. at 564 (emphasis in original).

Second, and independently sufficient to warrant dismissal, Plaintiff's alleged injury is insufficiently "concrete" to establish standing.  A "long line of cases" in the Ninth Circuit holds that "a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit."  *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220–21 (9th Cir. 1992) (collecting cases); *see, e.g.*, *Friery v. L.A. Unified Sch. Dist.*, 448 F.3d 1146, 1149 (9th Cir. 2006) (holding that a plaintiff had not established standing where he had not applied).  The Ninth Circuit established that rule because "the failure to make a concrete request can leave the dispute between the parties too nebulous for judicial resolution."  *Madsen*, 976 F.2d at 1221.

That rule applies here.  Plaintiff does not allege that he has applied for a position for which he was required to submit a DEI statement, nor does he allege that there is an upcoming job opening to which he plans to apply.  Instead, Plaintiff's claimed "injury" is the mere speculation that he *might* in the future be expected to prepare a DEI statement as part of a job application and that DEI statement *might* be graded using a rubric to which he objects.  Plaintiff's failure to apply creates just the sort of ambiguity the Ninth Circuit identified in *Madsen*.  Without an application, neither the Court nor Defendants can evaluate identify a real dispute or evaluate the nature of it— e.g., whether Plaintiff would be qualified and competitive for any future job opening, whether and how he would or would not complete all required elements of the application, including the DEI statement, and whether his application would be accepted and how it would be reviewed.  In other words, "the absence of an application has rendered the policy and legal dispute ambiguous." *Dragovich v. U.S. Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1186 (N.D. Cal. 2011) (citing *Madsen* but

distinguishing it due to the existence of an unambiguous threshold requirement the plaintiff could not meet).

Plaintiff attempts to avoid this issue by alleging in conclusory terms that any hypothetical application he might submit at some point in the future would be futile.  But Plaintiff's bare allegation of futility is not enough.  Futility does not confer standing where, as here, there is at most "a bare statement of intent alone against the context of a record that shows nothing more than an abstract generalized grievance." *Carney v. Adams*, 141 S. Ct. 493, 502 (2020).  And the Ninth Circuit has refused to find an application futile where, as here, the claim of futility is based on a series of assumptions about how a decisionmaker might interpret and apply an ambiguous policy and its exceptions. *See Friery*, 448 F.3d at 1149.  The Ninth Circuit has instead applied the futility doctrine only when it was unambiguously clear from the record that the plaintiff would not have received the benefit had they applied, as might be the case when similarly situated persons were rejected or when the plaintiff unambiguously could not meet an objective threshold requirement. *See Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) (finding an application futile where "the statute in question unambiguously precludes" the plaintiff from receiving a benefit); *Gutowsky v. Cnty. Of Placer*, 108 F.3d 256, 260–61 (9th Cir. 1997); *Bouman v. Block*, 940 F.2d 1211, 1222 (9th Cir. 1991).

By contrast, Plaintiff makes no allegation that applicants with beliefs similar to his—*i.e.,* "colorblind inclusivity," "viewpoint diversity" and "merit-based evaluation" alone—have been denied.  Nor does he allege facts that would allow the Court to conclude that the DEI statement is a threshold requirement that "unambiguously precludes" him from being hired for a position.  *See Taniguchi*, 303 F.3d at 957.  Instead, he has presented the Court with ambiguity, conjecture, and speculation.  He does not allege that he would have been barred from submitting a DEI statement, but instead that he believes the contents of his statement would have been poorly received.  That is a critical distinction:  unlike a plaintiff whose application is futile because they do not satisfy a specified objective criterion, the DEI statement is a nuanced piece of writing scored by a faculty committee on a range of factors using a detailed rubric.  Because Plaintiff did not apply for a position, there is no way to know how a DEI statement based on his Plaintiff's personal beliefs and

experiences "mentoring students from all backgrounds" would have scored.  Indeed, Plaintiff makes no allegations concerning his views of sex, gender identity, or other personal characteristics, which he alleges the rubric also evaluates.  Plaintiff's allegations also make clear that the DEI statement is evaluated alongside a research statement.  *See* FAC ¶ 68.  Because Plaintiff did not actually apply for a position or submit any application materials, including a research statement, there is no way to know how his research statement would have been scored.  Plaintiff's argument that an application would be futile is therefore based on "conjecture and speculation" and so cannot excuse his failure to apply.  *See Friery*, 448 F.3d at 1149–50.

In any event, the allegation that there was once an open position—to which Plaintiff did not apply—is irrelevant because Plaintiff seeks only prospective relief.  *See* FAC at p. 12 (Request for Relief).  And even if Plaintiff had applied and been denied, as the Supreme Court has explained, "[p]ast exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (citation omitted); *see also Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (holding plaintiff's allegations that she had previously been illegally wiretapped, absent any allegation that she was likely to be illegally wiretapped in the future, were insufficient to give her standing to seek prospective relief).  Plaintiff does not allege any such continuing, adverse effects. He does not claim, for example, that there is currently a position in the UC Santa Cruz Psychology Department in which he is interested but cannot apply.  Nor does he allege that such a position will become available in the near future.  And, of course, even if Plaintiff alleged a position was or would soon be open, his failure to apply would mean he has not suffered a present or ongoing injury. Because Plaintiff has not alleged any such ongoing injury, he lacks standing to pursue injunctive relief—the only relief he seeks.

### 2. *Plaintiff Has Not Alleged an Injury Caused by the DEI Statement Requirement*

The third independently sufficient basis to dismiss for lack of standing is that Plaintiff has not adequately alleged he suffered any injury "fairly traceable" to the DEI statement requirement that he challenges.  *See Lujan*, 504 U.S. at 560 (alteration and citation omitted).  To satisfy the

causation element of Article III standing, "[t]he line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citation omitted).  Where some factor other than the challenged conduct breaks the causal chain between the defendant's challenged conduct and the plaintiff's claimed injury, "the causal chain is too weak to support standing." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) (citation omitted); *accord Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 694–95 (7th Cir. 2015).

Plaintiff has not sufficiently alleged that the DEI statement requirement caused any injury because he has not alleged—and cannot allege—that he would be interested in and qualified for any hypothetical future position that might arise at UC Santa Cruz.  Plainly, Plaintiff does not plausibly allege that the DEI statement requirement is standing between him and a job.  Plaintiff makes no allegations, for example, about the potential contents of his required research statement, which is the only other part of the application considered at the initial screening stage.  FAC ¶ 67.  Instead, Plaintiff alleges in conclusory terms that "[h]e is qualified for employment in the Psychology Department at UC Santa Cruz and has applied to that university in the past."  FAC ¶ 7.  That barebones allegation is insufficient to establish standing.  *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013) ("[C]onclusory and bare bones words and phrases without any factual content" are "vacuous claims . . . insufficient to establish standing or to survive a motion to dismiss.").

Nor do Plaintiff's allegations about his degrees, research interests, or 10 years of experience establish that he has standing.  Without allegations as to a specific position for which UC Santa Cruz might be hiring and in which Plaintiff might be interested, Plaintiff has not established that the DEI statement requirement (as opposed to a lack of other qualifications) would be the cause of any future potential harm.  For example, a position might be available for entry-level candidates only, or it might be available for candidates with different research interests or experience.  Plaintiff therefore has failed to satisfy his burden to establish standing for this independent reason.  *Cf. Carroll v. Nakatani*, 342 F.3d 934, 942 (9th Cir. 2003) (holding that party lacked standing where party filed only a "symbolic, incomplete application" and did not demonstrate an "ability to compete" for benefit); *Bradley v. T-Mobile US, Inc.*, No. 17-cv-07232, 2020 WL 1233924, at *10 (N.D. Cal. Mar.

1   13, 2020) (to establish standing, plaintiffs had to "plausibly allege that they were 'able and ready'

2   to apply" for jobs, with "'able' mean[ing] qualified" and 'ready' mean[ing] seeking employment

3   and genuinely interested in the position" (citations omitted)).

4        **B.**     **Plaintiff Fails to State a First Amendment Viewpoint Discrimination Claim**

5        Though Plaintiff's lack of standing dooms his complaint and means this Court need not

6   reach the merits, Plaintiff's First Amendment viewpoint discrimination claim fails on the merits,

7   too.  To state such a claim against a government employer, an employee or applicant must

8   plausibly allege "(1) that he or she engaged in protected speech; (2) that the employer took

9   'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating

10   factor' for the adverse employment action."  *Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210

11   (9th Cir. 2015) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)); *see also*

12   *Oyama v. Univ. of Haw.*, 813 F.3d 850, 866 n.12 (9th Cir. 2015) (collecting cases applying this

13   test to job applicants).  Plaintiff fails on all three parts of this test.[2]

14        1.     *The DEI Statement Requirement Does Not Implicate Protected Speech.*

15        Plaintiff's claim fails at the outset because he has not identified any speech that would be

16   "protected" private speech for First Amendment purposes.  Public employees generally do not enjoy

17   First Amendment protection for speech made "pursuant to their official duties."  *Garcetti*, 547 U.S.

18   at 421.  Job applicants similarly do not enjoy First Amendment protection for statements used by

19   employers to evaluate their ability to carry out official duties.  *Wetherbe*, 593 F. App'x at 329

20   (extending rule regarding lack of First Amendment protections for public employees to applicants

21

22   [2] The Ninth Circuit has sometimes described this as a five-part test, in which the first three elements

23   encompass the three elements quoted above and the last two elements encompass an affirmative

24   defense that would be triggered if the plaintiff can satisfy the first three elements.  *See Oyama*, 813

25   F.3d at 865 (describing framework); *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (describing

26   specific test for "teaching and academic writing").  Because Plaintiff cannot establish any of the

27   first three elements, the Court need not evaluate the last two elements here.

28

for public employment); *Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000) (same); *Bonds v. Milwaukee Cnty.*, 207 F.3d 969, 979 (7th Cir. 2000) (same); *Hubbard v. EPA*, 949 F.2d 453, 460 (D.C. Cir. 1991) (same).

The Supreme Court has long recognized that the government must, in certain circumstances, make content- and viewpoint-based choices; particularly when it comes to "competing applicants, … absolute neutrality is simply 'inconceivable.'" *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 585 (1998). That is particularly true as to universities:  Because "academic freedom" of *universities* (public and private) has long been "a special concern of the First Amendment," universities will nearly always cultivate and maintain their own institutional viewpoints as exercises of that essential freedom. *Regents of Univ. of Mich.*, 474 U.S. at 226.  Like other government entities, when a public university "embarks on a course of action, it necessarily takes a particular viewpoint and rejects others." *Matal*, 582 U.S. at 234.  Because "imposing a requirement of viewpoint-neutrality on government speech would be paralyzing," the "Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about that venture." *Id.*  Forcing viewpoint neutrality on public universities, therefore, would preclude universities, as institutions, from meaningfully engaging in the kind of academic exploration, discovery, and societal impact that form the core of academic freedom.

In light of that reality, the Supreme Court has acknowledged that public entities "need a significant degree of control over their employees' words and actions" in carrying out their functions. *Garcetti*, 547 U.S. at 418-19.  That is why the Supreme Court held in *Garcetti* that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 418–19, 421. As discussed below, this also applies to applicants.

(a)      The DEI Statement Is Not Protected Speech Under *Garcetti*

Under *Garcetti*, when "public employees make statements pursuant to their official duties," public employers may restrict or evaluate such speech without running afoul of the First Amendment. *Id.* at 421.  That principle necessarily extends to speech by *prospective* government

1    employees in the hiring context, where "the speech plainly owes its existence to the government,"

2    and the applicant's "opinion on issues that are central to the operation and mission of the institution

3    … will allow [the hiring committee] to gauge whether the applicant will be an effective employee."

4    *Wetherbe*, 593 Fed. Appx. at 329; *see also Oyama*, 813 F.3d at 866 n.12 (collecting cases).  As the

5    Fifth Circuit explained in the context of a prospective public university professor who was not hired

6    due to statements made in his interview, "[n]othing in First Amendment jurisprudence suggests that

7    a government employer is so restricted relative to a private employer that the government cannot

8    screen applicants to ensure that they actually will perform their duties with maximal diligence."

9    *Wetherbe*, 593 F.3d at 329; *accord Worrell*, 219 F.3d at 1207; *Bonds*, 207 F.3d at

10    979; *Hubbard*, 949 F.2d at 460.

11        Applying *Garcetti* to speech by job applicants related to job functions is consistent with

12    broader First Amendment principles.  The Supreme Court has recognized that government may, and

13    indeed often must, evaluate speech made related to the criteria used to award a government benefit—

14    such as a grant, an appearance on public television, or the inclusion of a book in a public library—

15    as part of a competitive selection process and that such evaluation therefore does not amount to

16    impermissible viewpoint- or content-based discrimination.  *See, e.g.*, *United States v. Am. Library*

17    *Ass'n, Inc.*, 539 U.S. 194, 204 (2003); *Nat'l Endowment for the Arts*, 524 U.S. at 586; *Ark. Educ.*

18    *Television Comm'n v. Forbes*, 523 U.S. 666, 672-73 (1998)).  And courts across the country,

19    including the Ninth Circuit, have applied this reasoning to permit content and viewpoint evaluation

20    in the many competitive selection and certification processes that public universities constantly

21    facilitate.  *See, e.g.*, *Oyama*, 813 F.3d at 868 (holding that the university could refuse to admit a

22    prospective student teacher into a certification program due to speech that was inconsistent with

23    "established professional standards"); *Buxton v. Kurtinitis*, 862 F.3d 423, 430 (4th Cir. 2017)

24    (rejecting a First Amendment claim related to a denial of admission to a public university due to

25    interview statements because "any competitive interview process . . . requires distinctions to be

26    made based on the speech—including the content and viewpoint—of the interviewee"); *Keeton v.*

27    *Anderson-Wiley*, 664 F.3d 865, 867 (11th Cir. 2011) (holding that requiring a graduate student to

28    complete a remediation plan in order to participate in the public university's clinical counseling

practicum because of perceived "deficiencies in her ability to be a multiculturally competent counselor, particularly with regard to working with gay, lesbian, bisexual, transgender, and queer/questioning (GLBTQ) populations," did not violate the student's Free Speech rights (internal quotation marks omitted)).  Thus, without implicating the First Amendment, UC Santa Cruz may evaluate—and make hiring decisions on the basis of—speech made by job applicants concerning their ability to perform the official duties of the position to which they have applied.

As alleged in the complaint, the DEI statement requirement is plainly part of UC Santa Cruz's efforts to evaluate applicants' ability to perform their "official duties" as a UC Santa Cruz faculty member, if hired.  To determine the scope of an employee's "official duties," the "proper inquiry is a practical one" that looks to the "duties an employee actually is expected to perform." *Garcetti*, 547 U.S. at 423-25.  Plaintiff concedes that UC Santa Cruz and its Psychology Department "actually . . . expect" its faculty to engage in DEI-related activities.  FAC ¶ 13 (alleging that UC has evaluated faculty members for tenure and promotion based on their efforts to promote "diversity and equal opportunity" for nearly 20 years).  Though Plaintiff alleges that these activities have "nothing to do with the University's mission, the qualifications for any given tenure-track position, or professionals standards for academics," that bare allegation is unsupported by any factual allegations and is therefore too conclusory to be credited.  *Perez*, 711 F.3d at 1113 (refusing to credit "bare bones words and phrases without any factual content").  And it is irrelevant in any event. Under *Garcetti*, what matters is the job duties the government employer expects the employee to perform, not the prospective employee's assessment of the wisdom of those expectations.  *See Garcetti*, 547 U.S. at 425.

Plaintiff's allegation that the information in DEI statements is not relevant to the University's mission is also inherently implausible.  The Supreme Court recognized recently that students' race, gender, and other characteristics that may make them underrepresented on university campuses may (though do not always) shape other aspects of their life experience.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2175 (2023).  The Court explained that a student may demonstrate unusual "courage and determination" by "overcom[ing] racial discrimination" or a student's "heritage or culture" may "motivate[] him or her to assume a

leadership role or attain a particular goal." *Id.*  UC Santa Cruz therefore has a strong interest in hiring faculty who will be aware of and sensitive to how a wide range of personal experiences might inform a student's "unique ability to contribute" to their field. *See id.*  It is deeply illogical for Plaintiff to deny that UC Santa Cruz best serves all of its students by hiring faculty who are capable of recognizing the role that such experiences may sometimes play in students' lives.

Because *Garcetti* applies and, under *Garcetti*, there is no First Amendment-protected speech at issue here, Plaintiff's viewpoint discrimination claim should be dismissed.

(b)     Plaintiff Cannot Avoid *Garcetti* by Claiming the DEI Statement Requirement Relates to Academic Writing

Plaintiff may attempt to argue that *Garcetti* does not apply because his claim implicates his own academic freedom interests.  That argument will fail.  In *Demers*, the Ninth Circuit held that *Garcetti* does not apply to a professor's speech related to "teaching and academic writing" and that such speech therefore received First Amendment protection.  746 F.3d at 412.  But *Demers* does not apply, under the allegations of Plaintiff's complaint.  That is, the Ninth Circuit has also expressly held that university *service* activities—such as sitting on committees that inspect and ensure the legality of certain research activities—do not relate to "teaching and academic writing" and are therefore governed by the *Garcetti* test.  *See Sullivan v. Univ. of Wash.*, 60 F.4th 574, 582 n.6 (9th Cir. 2023).  Applying the same standard, the Fourth Circuit held recently that a professor's emails criticizing hiring searches and statements in faculty meetings disapproving of DEI initiatives did not "relate[] to scholarship or teaching" and so were governed by *Garcetti*.  *Porter v. Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 582 (4th Cir. 2023) (citation omitted).

As alleged by Plaintiff, the submission of a DEI statement as part of the hiring process is the same sort of non-scholarly activity that was at issue in *Sullivan* and *Porter*.  It is therefore not within the narrow category of "speech relating to scholarship or teaching" that falls outside *Garcetti*'s reach.  Indeed, as noted above, Plaintiff himself alleges that DEI statements "have nothing to do with the University's mission, the qualifications for any given tenure-track position, or professional standards for academics."  FAC ¶ 54.  Plaintiff similarly alleges that faculty activities to promote "diversity and equal opportunity," which could and often do take place

outside the classroom, are distinct from "more traditional measures of aptitude, including academic success, publications, research plans, and teaching ability." *Id.* ¶¶ 13-14.  The University, of course, disagrees that DEI statements lack any relevance to the University's mission or faculty's qualifications; to the contrary, DEI statements are essential to the University's mission of hiring faculty who will be able to provide an excellent and equitable education to the University's diverse student body.  But Plaintiff's allegations must be taken as true on a motion to dismiss.  Doing so here, Plaintiff's own allegations demonstrate that the DEI statement requirement does not restrict or otherwise evaluate speech "relating to scholarship or teaching"— and, in fact, claim the opposite.  Accordingly, the *Garcetti* standard applies to—and bars—any First Amendment claim.

### 2. *Plaintiff Has Not Alleged Any Adverse Employment Action*

Plaintiff's assertion of an adverse employment action is missing an essential ingredient: any past, current, or future potential employment relationship between him and Defendants.  Defendants cannot have taken any adverse employment against him because he has not alleged that he applied for or was denied any job, or even that there was or will soon be any job from which the requirement to submit a DEI statement deterred him from applying.  *See supra* p. 9-11 (Plaintiff has not suffered a cognizable injury for similar reasons).

Even if Plaintiff were to apply for a job at some point in the future, his allegation that he would not receive a high score also is not sufficient to plead an adverse employment action.  The Ninth Circuit's approach to performance evaluations—which, like individual components of a job application can, but do not always, lead to employment decisions—shows what the law would be in this hypothetical scenario.  The Ninth Circuit has held that, even under the more relaxed standard for retaliation claims, "mediocre" evaluations are adverse employment actions only if they "give rise to … further negative employment action[]."  *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) (describing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112-13 (9th Cir. 2000)); *see also Coszalter*, 320 F.3d at 976 (explaining that the same standard for adverse action applies for retaliation claims under both Title VII and the First Amendment).  But Plaintiff does not allege any facts beyond the bare conclusion that any DEI statement that he might submit

would give rise to negative employment action.  Plaintiff does not allege that a low DEI statement score is or has ever been disqualifying for any job candidate in the UC Santa Cruz Psychology Department.  Nor does he allege that a high DEI statement score guarantees advancement to the next round of consideration of an application.  Further, while he alleges that the DEI statement is considered alongside a research statement, he does not and cannot make any allegation about how any potential research statement he might submit would score.  There is therefore no basis plausibly to conclude that Plaintiff's hypothetical DEI statement score—whether high or low or somewhere in between—would result in a negative decision as to any job application that Plaintiff might submit in the future.  It therefore has not "matured into an adverse employment decision." *Lyons*, 307 F.3d at 1118.  Plaintiff's First Amendment claim fails for this reason as well.

> 3.  *Plaintiff Has Failed to Plausibly Allege that Any Viewpoint of His Was a "Substantial or Motivating Factor" for Any Adverse Employment Action.*

Finally, Plaintiff fails to plausibly allege that his views were the "substantial or motivating factor" for any action by Defendants, for three independent reasons.  *First*, as already explained, Plaintiff has failed to plausibly allege (a) that he was qualified for any past or future position at UC Santa Cruz, or (b) what the contents of his research statement would have been.  *See supra* p. 11-13.  Plaintiff therefore has failed to allege that the DEI statement—and not his lack of qualifications with respect to other aspects of any open position—would be a "substantial or motivating factor" in the decision to hire him.  That alone means he has not pleaded the third element of his claim.

*Second*, Plaintiff has not alleged with sufficient particularity what viewpoints UC Santa Cruz is allegedly favoring or disfavoring or how his own views are disfavored.  Plaintiff alleges that the DEI statement rubric used at UC Santa Cruz evaluates prospective faculty members in three categories: "awareness, experience, and future plans at UC Santa Cruz."  FAC ¶ 40.  Plaintiff fails to make any allegation about the underlying substance of the "awareness" requirement, thus failing to plausibly allege why or how it might constitute viewpoint discrimination.  *See* FAC ¶ 40 ("Ideas and beliefs that applicants are supposed to convey are . . . particularly captured under the 'awareness' heading.").  Similarly, Plaintiff alleges that the rubric's evaluation of "experience" and "future plans" are "thinly veiled proxies for particular beliefs that the administration favors," without saying

what those beliefs allegedly are.  FAC ¶ 41.  Plaintiff also offers only sparse and vague additional allegations about UC Santa Cruz's rubric and thus about the ideological beliefs that he claims he would be forced to espouse or adopt if a position opened and he applied for it.  *See, e.g.*, FAC ¶ 38.  For example, he alleges that UC Santa Cruz defines the terms "diversity," "equity," and "inclusion" "in a specific manner that ensures successful applications adhere to a particular ideology and worldview", but he does not further elaborate on what that alleged ideology or worldview is.  *Id.*

The closest Plaintiff comes to alleging specific criteria in the rubric are his allegations that the University would score DEI statements higher if they believe "treating individuals differently based on their race or sex is desirable" and lower if they "believe race and sex should not be used to judge individuals."  *Id.* ¶¶ 43–46.  But this is still far too vague to adequately plead viewpoint discrimination.  There are numerous anodyne ways that a university might treat people differently according to sex and race to which Plaintiff may well not object, including the maintenance of some sex-segregated bathrooms, housing first-year students in rooms with roommates of the same sex, offering men's and women's athletics teams, or even using race to recommend particular medical care for students of different races based on genetic or epidemiological factors.  These examples illustrate why Plaintiff must at the pleading stage offer "more than labels and conclusions" or allegations that are merely "consistent with" both unlawful and lawful conduct.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).   Plaintiff's allegations are too general to permit the Court or Defendants to determine what viewpoint he claims the University seeks to privilege.

Nor does Plaintiff adequately allege which personal views of his are inconsistent with whatever viewpoint he claims the University is privileging.  Plaintiff alleges only that he "rejects DEI orthodoxy" and is "committed to colorblindness" and "individual merit."  FAC 64.  This is deficient on multiple levels.   As an initial matter, it is not obvious why a commitment to "colorblindness" or "individual merit" is at odds with UC Santa Cruz's DEI statement rubric.  The Supreme Court explained just a few weeks ago that a policy can be both "colorblind[]" and credit individuals' varying accounts of how race has shaped their lives (which may be different for students of different races) in evaluating their "unique ability to contribute to the university"—*i.e.*, individual merit.  *See Students for Fair Admissions*, 143 S. Ct. at 2174.  Additionally, Plaintiff makes no

allegations with respect to his views of sex at all, so his allegation that the rubric preferences treating people differently based on sex is entirely irrelevant to his claims.  Finally, Plaintiff's allegation that he "objects to DEI orthodoxy" is inscrutable, especially as he never explains what DEI means to him (or anyone else), let alone what its "orthodoxy" might require.  And, of course, because Plaintiff did not apply for any position at UC Santa Cruz, he does not and cannot explain how he would have fared with a DEI statement that is consistent with his alleged personal views.  Without further specificity regarding Plaintiff's beliefs and how they relate to whatever viewpoints he alleges UC Santa Cruz is privileging, it is impossible for the Court to evaluate whether his views would be a "substantial and motivating factor" for any potential action by any Defendant.

*Third*, even to the extent that Plaintiff has alleged the substance of UC Santa Cruz's criteria for evaluating DEI statements, his allegations establish only that UC Santa Cruz evaluates applicants based on professional competence with respect to diversity, equity, and inclusion—not personal viewpoint.  With respect to both "experience" and "future plans," Plaintiff alleges that applicants are "evaluated based on an applicant's past or planned contributions to diversity, equity, and inclusion in teaching, research and professional work, and service and professional activities."  FAC ¶ 41.  That is not equivalent to asking a faculty member's personal views on DEI-related issues, no matter how Plaintiff might attempt to characterize it.  *Cf.* Brian Soucek, *Diversity Statements*, 55 U.C. Davis L. Rev. 1989, 2019 (2022) (in diversity statements, "faculty are being asked to share their accomplishments, not their own view of whether those accomplishments were worthwhile, a good use of their time, or something they would do if it weren't financially rewarded by their employer").  Employees are often called upon to carry out and support employer programs with which they disagree or that they think take the wrong approach to solving a particular problem.  The DEI statement evaluates an applicant's achievements with respect to "promoting equal opportunity and diversity," FAC ¶ 13, which is not the same as the applicant's viewpoint on those topics.

Insofar as an "awareness" category might implicate knowledge of particular facts, statistics, or research findings, that, too, is distinct from an evaluation of viewpoint.  While there may be a wide range of viewpoints about politically salient topics, facts remain facts and evaluating knowledge (or lack thereof) is not equivalent to evaluating viewpoint.  By analogy, a public

university health clinic does not engage in "viewpoint discrimination" by asking applicants for nursing positions about their experience and ability to administer mandatory vaccines or even their awareness of peer-reviewed studies demonstrating vaccines' efficacy and side effects. It instead simply asks the applicant about job-relevant knowledge and their experience and ability to perform expected job functions. Alleging that these criteria are "thinly veiled" attempts at viewpoint discrimination is wholly insufficient to require a court to treat them as such on a motion to dismiss.

The fact that Plaintiff aspires to be a faculty member does not require a different result, notwithstanding principles of academic freedom. University faculty are often asked to implement administrative policies that may conflict with their research or personal perspectives. For example, professors in the Psychology Department may in their academic research have varying personal or scholarly views about the appropriateness of accommodations for students with certain kinds of disabilities like dyslexia, such as extra time on exams or in-class notetaking support. But all professors are required to comply with the University's disability accommodations policies and the University's view of what the law requires to provide those students equal access to education. *See, e.g.*, 42 U.S.C. § 12132. Similarly, Psychology professors might take a Freudian view of sexual orientation, believing same-sex attraction to be a pathological response to childhood trauma. Professors may have those views and conduct research in accord with them, but they must still treat their LGBTQ students with respect and dignity and without bias or discrimination. *See, e.g.*, 20 U.S.C. § 1681(a). In other words, while professors have broad academic freedom rights to research and possess controversial views, they also have myriad other job duties that may sometimes conflict with their academic views. The DEI statement requirement is no different: it focuses on how faculty will perform their job duties related to creating an academic environment that is inclusive of all members of UC's diverse student body, regardless of their personal views on diversity initiatives or "DEI" more broadly. Plaintiff has therefore failed to establish any adverse action based on viewpoint for this reason as well—because the DEI statement requirement does not evaluate his viewpoint as to DEI issues but instead how he will perform his job duties.

In short, Plaintiff has failed to satisfy any of the three elements necessary to alleging a claim for viewpoint discrimination: he has not alleged protected speech under *Garcetti*; he has not alleged

that he has faced or will face an adverse employment action; and he has not alleged that his viewpoint has motivated or will at some point in the future motivate any such adverse employment action.  The viewpoint discrimination cause of action in the FAC should therefore be dismissed.

### C.   Plaintiff Fails to State a Claim for Unconstitutionally Compelled Speech Under the First Amendment

Plaintiff's second claim for compelled speech fails at the outset for the same reasons as his viewpoint discrimination claim.  Plaintiff alleges that the same policy and underlying facts give rise to both his compelled speech and viewpoint discrimination claims.  The Supreme Court has rejected arguments that there is any "constitutional significance" to the difference between government action that compels, rather than restricts, speech.  *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988).  The compelled speech claim fails for this reason alone.

In addition, Plaintiff has failed to allege any compelled speech, for a number of reasons. *First*, as a threshold matter, because Plaintiff has not yet applied for any position at UC Santa Cruz (and may never apply for such a position), he has not been and may never be compelled to speak. That is another independent basis for the failure of his compelled speech claim.

*Second*, although UC Santa Cruz's Psychology Department required a DEI statement in connection with a recent faculty hiring search, neither UCSC  nor its Psychology Department dictates what that statement must say or must not say.  *Cf. Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("The First Amendment means that a state cannot tell anyone what to read or write, but a state university may demand that students read things they prefer not to read and write things they prefer not to write.").  Plaintiff is therefore not compelled to convey any particular message in his DEI statement.

*Third*, as discussed above, the compelled speech doctrine does not bar the University from conditioning a grant of employment on its evaluation of the statement that the applicant ultimately elects to make relating to how they will carry out their official duties.  *See Wetherbe*, 593 F. App'x at 329; *see also supra* p. 15-19.  That is so even if that evaluation does involve some incidental compulsion of speech, as might be the case with written assignments.  *See Keeton*, 664 F.3d at 867 (holding that the First Amendment permitted a university to require a graduate student who wished

to counsel patients through the university's practicum to undertake remedial courses related to counseling LGBTQ patients—courses that would necessarily compel some amount of speech from the student—despite her conflicting personal views). Thus, for these separate and independent reasons, Plaintiff has failed to state a claim of unconstitutionally compelled speech.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss the FAC with prejudice. A dismissal with prejudice is appropriate because no possible amendment could cure the defects in the FAC, including the fundamental problems that Plaintiff has not applied for a position at UC Santa Cruz or identified an open position for which he would be qualified and would want to apply. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (upholding denial of leave to amend when amendment would be futile).

DATED:  August 7, 2023                    MUNGER, TOLLES & OLSON LLP

By:  _____*/s/ Bryan H. Heckenlively*_____
       BRYAN H. HECKENLIVELY
Attorneys for Defendants