BRYAN H. HECKENLIVELY (State Bar No. 279140)
Bryan.Heckenlively@mto.com
JOHN B. MAJOR (State Bar No. 306416)
John.Major@mto.com
JING JIN (State Bar No. 343210)
Jing.Jin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

CHARLES F. ROBINSON (State Bar No. 113197)
RHONDA GOLDSTEIN (State Bar No. 250387)
KATHARINE ESSICK (State Bar No. 219426)
Katharine.Essick@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-9800
Telephone:    (510) 987-9800
Facsimile:    (510) 987-9757

Attorneys for Defendants

* Additional counsel listed on following page.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| JOHN D. HALTIGAN,<br><br>      Plaintiff,<br><br>    vs.<br><br>MICHAEL V. DRAKE, in his official capacity as President of the University of California; CYNTHIA K. LARIVE, in her official capacity as Chancellor of UC Santa Cruz; BENJAMIN C. STORM, in his official capacity as Chair of the UC Santa Cruz Psychology Department; and KATHARYNE MITCHELL, in her official capacity as Dean of the UC Santa Cruz Division of Social Sciences,<br><br>      Defendants. | Case No. 5:23-cv-02437-EJD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:   Hon. Edward J. Davila<br><br>Date:    October 12, 2023<br>Time:   9:00 a.m.<br>Courtroom: 4 |

HELEN E. WHITE (*pro hac vice*)
Helen.White@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave NW, Ste. 500E
Washington, District of Columbia 20001-5369
Telephone:   (202) 220-1136
Facsimile:    (202) 220-2300

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................2

    A. Plaintiff Lacks Standing to Sue ..........................................................................2

        1. Plaintiff Has Not Alleged That There Is or Will Soon Be a Job Opening Requiring a DEI Statement ...............................................................2

        2. Plaintiff Has Not Applied for Any Job at UC Santa Cruz Requiring a DEI Statement ....................................................................................................4

    B. Plaintiff's Complaint Fails to State a First Amendment Viewpoint Discrimination Claim ...........................................................................................7

        1. Plaintiff Has Not Adequately Alleged That the DEI Statement Requirement Involves Protected Speech ............................................................7

            (a) The DEI Statement Requirement Does Not Implicate Protected Speech Because It Relates to Faculty Members' "Official Duties" .................8

            (b) The DEI Statement Requirement, as Alleged, Does Not Relate to Teaching and Academic Writing .....................................11

        2. Plaintiff Has Not Adequately Alleged That the DEI Statement Requirement Has or Would Cause Any Adverse Action ..............................13

    C. Plaintiff's Unconstitutional Conditions Claim also Fails ........................................13

III. CONCLUSION ..............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ariz. Right to Life Pol. Action Comm. v. Bayless*,
 320 F.3d 1002 (9th Cir. 2003)..................................................................................................6, 7

*Bouman v. Block*,
 940 F.2d 1211 (9th Cir. 1991)......................................................................................................13

*Bras v. Cal. Pub. Utils. Comm'n*,
 59 F.3d 869 (9th Cir. 1995)...........................................................................................................5

*Carney v. Adams*,
 141 S. Ct. 493 (2020) ......................................................................................................... 1, passim

*Demers v. Austin*,
 746 F.3d 402 (9th Cir. 2014).................................................................................................11, 12

*Dragovich v. U.S. Dep't of the Treasury*,
 764 F. Supp. 2d 1178 (N.D. Cal. 2011) ....................................................................................4, 5

*Friery v. L.A. Sch. Dist.*,
 448 F.3d 1146 (9th Cir. 2006)................................................................................................4, 5, 7

*Garcetti v. Ceballos*,
 547 U.S. 410 (2006) ........................................................................................................... 2, passim

*Gratz v. Bollinger*,
 539 U.S. 244 (2003) .......................................................................................................................5

*Gutowsky v. Cnty. of Placer*,
 108 F.3d 256 (9th Cir. 1997).......................................................................................................13

*Lacey v. Maricopa Cnty.*,
 693 F.3d 896 (9th Cir. 2012) (en banc)........................................................................................2

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .......................................................................................................................3

*Malarkey v. Texaco, Inc.*,
 983 F.2d 1204 (2d Cir. 1993).......................................................................................................13

*NEA v. Finley*,
 524 U.S. 569 (1998) .....................................................................................................................10

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
 508 U.S. 656 (1993).........................................................................................................................4

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007) .................................................................................................... 5

*Perry v. Sindermann*,
   408 U.S. 593 (1972) .................................................................................................. 10

*Planned Parenthood of Greater Wash. & N. Idaho v. United States Department of Health & Human Services*,
   946 F.3d 1100 (9th Cir. 2020) .................................................................................... 5

*Porter v. Bd. of Trs. of N.C. State Univ.*,
   72 F.4th 573 (4th Cir. 2023) ............................................................................... 11, 12

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007) .................................................................................................... 2

*Santa Monica Food Not Bombs v. City of Santa Monica*,
   450 F.3d 1022 (9th Cir. 2006) .................................................................................... 6

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ................................................................................. 3, 6

*Shackelford v. Deloitte & Touche, LLP*,
   190 F.3d 398 (5th Cir. 1999) .................................................................................... 13

*Shelton v. Tucker*,
   364 U.S. 479 (1960) .................................................................................................. 10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   143 S. Ct. 2141 (2023) .............................................................................................. 10

*Sullivan v. Univ. of Wash.*,
   60 F.4th 574 (9th Cir. 2023) ..................................................................................... 12

*Taniguchi v. Schultz*,
   303 F.3d 950 (9th Cir. 2002) .................................................................................... 13

*Terry v. Cook*,
   866 F.2d 373 (11th Cir. 1989) .................................................................................. 13

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................................ 2, 4

*Turner v. City & Cnty. of S.F.*,
   788 F.3d 1206 (9th Cir. 2015) .................................................................................... 7

*United States v. Baugh*,
   187 F.3d 1037 (9th Cir. 1999) .................................................................................... 4

*Wetherbe v. Smith*,
   593 F. App'x 323 (5th Cir. 2014)..........................................................................................8

*Worrell v. Henry*,
   219 F.3d 1197 (10th Cir. 2000)........................................................................................8, 9

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................3

I.     **INTRODUCTION**

Plaintiff's First Amendment challenge to Defendants' use of statements regarding contributions to diversity, equity, and inclusion ("DEI" statements) in hiring faculty at the University of California, Santa Cruz ("UCSC") fails for multiple independent reasons. His opposition is heavy on inflated rhetoric but notably light on any legal authority or argument that would affect the reasons for dismissal set forth in Defendants' motion to dismiss.

*First*, the opposition confirms that Plaintiff does not have standing to sue. He does not allege an injury that is either (a) actual or imminent or (b) concrete and particularized—and either of those two deficiencies alone requires dismissal. Plaintiff alleges neither (a) that there is currently or will imminently be a job to which he could apply nor (b) that he has actually applied to any job at UCSC requiring a DEI statement. He is therefore no differently positioned than any other member of the public who may have a "generalized grievance" about how UCSC handles hiring. *See Carney v. Adams*, 141 S. Ct. 493, 502 (2020).

Plaintiff's unusual decision to submit a declaration with his opposition suggests that he knows his allegations are insufficient to establish standing—but even the conclusory statement in his declaration that he is "ready and able" to apply (if he had actually alleged it) would fall well short of what he needs for standing. Not only is that statement the definition of conclusory, but being "ready and able" to apply is not enough to establish standing. This does not address the absence of a job to apply for—and therefore the absence of an actual or imminent injury (point (a) above). And, even in terms of (b) concreteness, the cases Plaintiff cites that apply the "ready and able" standard all involved objective criteria, such as race, that a prospective applicant could not satisfy, so there would have been no reason to require them to apply. Here, by contrast, DEI statements are judged by subjective criteria, and the principles of concreteness require Plaintiff actually to apply for a job before he has standing to file a lawsuit challenging how those subjective criteria might affect him.

*Second*, Plaintiff's claims fail on the merits because he does not allege any constitutionally protected speech. Plaintiff concedes that applicants for public employment do not have First Amendment protection during the application process for speech that enables the employer to

evaluate the applicant's ability to perform the "official duties" of the job. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Plaintiff argues vociferously that the DEI statement has nothing to do with official duties, but this rhetoric ignores what is actually alleged in his complaint. According to the First Amended Complaint ("FAC"), DEI statements enable UCSC to evaluate applicants' ability to perform job functions that Plaintiff himself alleges UCSC has expected faculty to perform for nearly twenty years. *See* Mot. at 15; FAC ¶ 13. DEI statements are therefore precisely the kind of speech that public employers can consider when hiring their employees and do not provide a valid basis for a First Amendment claim. Plaintiff also fails to allege an adverse employment action; nor could he as he did not apply for a job. That is an additional independently sufficient reason why Plaintiff's claims fail.

Defendants respectfully submit that the Court should grant their motion to dismiss with prejudice for any or all of these independently sufficient reasons.

## II.    ARGUMENT

### A.    Plaintiff Lacks Standing to Sue

#### 1.    *Plaintiff Has Not Alleged That There Is or Will Soon Be a Job Opening Requiring a DEI Statement*

First, Plaintiff does not allege that, at the time he filed the operative FAC, there was or would soon be an open position within the UCSC's Psychology Department.[1] *See* FAC ¶¶ 66–69. To state an injury-in-fact sufficient to support a court's exercise of jurisdiction, the alleged injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S.

---

[1] To the extent Plaintiff's repeated assertions that there was a job opening "at the time of filing" suggests that the Court should consider the allegations in the *original* complaint, that is wrong as a matter of law. The Supreme Court has explained that where, as here, "a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (an amended complaint "super[s]edes the original complaint and renders it without legal effect").

Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). All Plaintiff alleges is that, in July 2022—months before Plaintiff became unemployed and nearly a year before filing the amended complaint—UCSC announced a hiring search in its Psychology Department. FAC ¶¶ 60, 66. Plaintiff does not allege that the position was still open at the time he filed the FAC (indeed he appears to concede that the position is no longer open, *see* Opp. at 9). Nor does he make any allegations about the frequency with which the department has hired in the past or will in the future. *See* FAC ¶¶ 66–69. Without any allegations of any current or imminent job opening, Plaintiff has alleged only that "some day" he might be disadvantaged in a hiring process, without any "specification of *when* the some day will be." *Lujan*, 504 U.S. at 563–64. Such amorphous and speculative allegations of future injury are insufficient to establish the Court's jurisdiction. *See id.*; Mot. at 7–8.

      Plaintiff tries to paper over this obvious deficiency in his FAC by asserting in his opposition what is not alleged in his complaint. *See, e.g.*, Opp. at 5 (claiming that Plaintiff's complaint "is based on a specific job" that was "available at the time of filing"); Opp. at 7 ("[A]t the time he filed his complaint, there was an actual job that he was qualified for and that he wanted."); Opp. at 10 ("The University is constantly hiring and will inevitably post (another) job opening that [Plaintiff] is qualified for."). But even if a faculty job in the Psychology Department for which he was qualified would "inevitably" open up, Plaintiff's failure to specify when means this, too, is no more than a "some day" injury insufficient to confer standing. *See Lujan*, 504 U.S. at 563. And, as already explained, the relevant question is whether he alleges the job was open at the time of filing his amended, not original, complaint. *See supra* p. 2–3. In any event, motions to dismiss turn on the sufficiency of *the complaint*, not new allegations added in the briefs. Nor can Plaintiff add allegations by submitting a declaration with his opposition. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Plaintiff therefore has not made any allegations that there was any job—other than one posted nearly a year prior and which he concedes is no longer open—that he was either denied or prevented from fairly competing for.

His objection to UCSC's use of DEI statements in Psychology Department faculty hiring therefore presents an "abstract generalized grievance," *Carney*, 141 S. Ct. at 502, and not any "real controversy with real impact," *TransUnion*, 141 S. Ct. at 2203.

### 2. Plaintiff Has Not Applied for Any Job at UC Santa Cruz Requiring a DEI Statement

Independently, Plaintiff's injury is insufficiently concrete to confer standing because, as he concedes (Opp. at 7), he never submitted an application. *See TransUnion*, 141 S. Ct. at 2203. In general, a party must "have actually confronted the policy" that he alleges to be discriminatory in order to have standing to sue. *Friery v. L.A. Sch. Dist.*, 448 F.3d 1146, 1149 (9th Cir. 2006). One of the "several prudential and practical advantages" of this rule is that it "ensure[s] that the challenged policy *actually affected* the person challenging it," *id.* (quoting *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999)) (emphasis added), and avoids situations in which "the absence of an application has rendered the . . . dispute ambiguous," *Dragovich v. U.S. Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1186 (N.D. Cal. 2011).

Those considerations are particularly salient here. According to Plaintiff's allegations, the DEI statement rubric applies multiple highly subjective criteria to assess applicants' knowledge, past professional contributions, and future professional plans. *See* Mot. at 18–20 (describing Plaintiff's allegations concerning the DEI statement rubric). Plaintiff offers little in the way of allegations illustrating how that subjective criteria might be applied to anything he might submit. *Id.* (describing Plaintiff's allegations concerning his own views). He does not, for example, make any allegation that applicants with beliefs similar to his—i.e., "colorblind inclusivity," "viewpoint diversity" and "merit-based evaluation" alone—have been disadvantaged. Indeed, Plaintiff alleges that he has certain professional experiences that *would* receive high scores. *See* Mot. at 9–10. That is precisely the kind of ambiguous criteria that benefit from the concreteness of an actually submitted—and acted on—application in order to ensure that the policy "actually affected" Plaintiff. *See id.*

Plaintiff cites a slew of cases to claim that he need only be "ready and able" to apply. But none of those cases involved comparably subjective criteria. *Northeastern Florida Chapter of*

*Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 658 (1993), *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003), *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701, 719 (2007), and *Bras v. California Public Utilities Commission*, 59 F.3d 869, 873–74 (9th Cir. 1995), all involved explicit racial classifications—not subjective criteria—that provided specific advantages or disadvantages in a competitive process. Likewise, in *Carney*, 141 S. Ct. at 499–500, lawyers were eligible to become state court judges only if they were registered with one of the two major parties. Even in *Planned Parenthood of Greater Washington & Northern Idaho v. United States Department of Health & Human Services*, 946 F.3d 1100, 1106 (9th Cir. 2020), funding was made available only to bidders who used a specific risk assessment tool that Planned Parenthood refused to use and thought was unlawful. Thus, in each of these cases, it was obvious how the challenged objective criteria would "actually affect" the plaintiff's ability to compete, making the plaintiff's claimed injury sufficiently concrete to permit adjudication; none of these cases involved a situation in which the failure to apply "rendered the … dispute ambiguous," as here. *Dragovich*, 764 F. Supp. 2d at 1186; *see Friery*, 448 F.3d at 1149. Plaintiff does not cite a *single case* in which subjectively evaluated criteria like DEI competency were challenged and a court excused the plaintiff's failure to apply.

But even if Plaintiff needed only to allege that he is "ready and able" to apply, he has not alleged that. In *Carney v. Adams*, the Supreme Court held that a Delaware lawyer had not shown he was "able and ready to apply" for a state court judgeship and therefore lacked standing to challenge the partisan-balance requirements for judicial vacancies in that state. 141 S. Ct. at 501. The Court first deemed the plaintiff's "words 'I would apply[,] . . .' stand[ing] alone without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without any prior relevant conversations, [and] without efforts to determine likely openings." insufficient to establish standing. *Id*. The Court then looked to "context"—such as the plaintiff's failure to previously apply, and the timing of his filing of the complaint—as evidence of little more than a "desire to vindicate his view of the law" and not actually to apply to become a state court judge. *Id*. Lastly, the Court reasoned that "if we were to hold that [the plaintiff's] few words of general intent—without more and against all contrary evidence—were sufficient to show

an 'injury in fact,' we would significantly weaken the longstanding legal doctrine preventing this Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law." *Id.* at 501–02.

As in *Carney*, Plaintiff's allegations regarding his readiness and ability to apply are insufficient to establish standing. Plaintiff *does not even allege* that he is "ready and able" to apply for a position now or in the future. He of course has not alleged any current opening, *see supra* p. 2–3, but his pleading failures go well beyond that: While he alleges that he "*desires* a position at the University," FAC ¶ 69 (emphasis added), this is less than what was deemed insufficient in *Carney*. Plaintiff nowhere alleges that he "would apply" for a future opening. Nor has Plaintiff alleged any "actual past injury," "anticipated timeframe" for his application, "prior relevant conversations," or "efforts to determine likely openings." *See Carney*, 141 S. Ct. at 501–02. Plaintiff implicitly acknowledges this deficiency, as he offers a declaration that is both too little and too late to confer standing. Adding evidence outside of the pleadings in an opposition cannot avoid dismissal. *See Schneider*, 151 F.3d at 1196–97. And, in any event, all Plaintiff proffers is the bare—and insufficient—assertion that he is "ready" and "willing" to apply. *See* Haltigan Decl. ¶ 13. Just as in *Carney*, Plaintiff has not "sufficiently differentiated himself from a general population of individuals affected in the abstract" by the DEI statement requirement to establish his standing to sue. 141 S. Ct. at 501–02.

In Plaintiff's view, he is excused from applying on the theory that First Amendment challenges are broadly exempted from the ordinary requirements of Article III standing. But Plaintiff both overreads the cases and overstates his circumstances. Both cases on which Plaintiff relies involved pre-enforcement First Amendment challenges to statutory provisions that contained criminal or heavy civil penalties. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1030 (9th Cir. 2006) (challenging an ordinance criminalizing certain expressive and associational conduct in public places); *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (challenging a statute subjecting certain speech to civil penalties). As the Ninth Circuit explained in *Arizona Right to Life*, pre-enforcement challenges to such statutes are permitted based on the recognition that "one should not have to *risk*

*prosecution* to challenge a statute" on First Amendment grounds. 320 F.3d at 1006 (emphasis added). Plaintiff of course faces no such risk. Plaintiff would not have broken the law by submitting a DEI statement that reflects his sincerely held views. He does not and would not face prosecution or civil investigation. At worst, he would be in the same position he is in now (without a job at UCSC)—except he, Defendants, and this Court would have a record on which to evaluate whether and how the DEI statement requirement "actually affected" his application. *Friery*, 448 F.3d at 1149.

### B. Plaintiff's Complaint Fails to State a First Amendment Viewpoint Discrimination Claim

#### 1. *Plaintiff Has Not Adequately Alleged That the DEI Statement Requirement Involves Protected Speech*

Plaintiff does not dispute that the elements of a viewpoint discrimination claim against a government employer are: "(1) that [plaintiff] engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that [the plaintiff's] speech was a 'substantial or motivating factor' for the adverse employment action." *Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015). Plaintiff also does not dispute that, under *Garcetti*, public employees generally cannot bring First Amendment claims for speech related to their "official duties." Mot. at 14. Nor does Plaintiff dispute that this in turn means that speech by job *applicants* relevant to evaluating their ability to perform "official duties" is not actionable. *See* Opp. at 1.

Instead, Plaintiff's arguments are simply recycled versions of the same conclusory refrain: In his view, the DEI statement "requirement seeks to probe applicants for viewpoints *unrelated to the job*" and is thus outside their "official duties." Opp. at 13 (emphasis added); *see also, e.g.*, Opp. at 16 ("[T]he University is using DEI Statements to probe and evaluate candidates because of their beliefs that have little to do with their jobs."). For that reason, according to Plaintiff, the DEI statement requirement must therefore be some illicit attempt to regulate the views of private citizens. Yet this framing is inconsistent with Plaintiff's allegations, ignores the test for official duties announced in *Garcetti*, and is not supported by any of the cases Plaintiff cites.

(a) The DEI Statement Requirement Does Not Implicate Protected Speech Because It Relates to Faculty Members' "Official Duties"

Turning first to Plaintiff's legal arguments, he is wrong that the DEI statement requirement does not relate to the "official duties" Plaintiff would be expected to perform if hired. The Supreme Court has made clear that whether particular speech is related to "official duties" for purposes of *Garcetti* is a function of what the *employer* "actually . . . expect[s]" employees to do—not what Plaintiff thinks they *should* be asked to do. 547 U.S. at 424–25. Plaintiff nowhere alleges that the DEI statement requirement goes beyond what UCSC actually expects of its employees. Nor could he. By Plaintiff's own account, the University does "actually . . . expect" faculty members to demonstrate DEI competency and perform DEI-related activities: For example, Plaintiff alleges that, for nearly twenty years—and long before the advent of the DEI statement requirement—the University has evaluated faculty members for tenure and promotion based on their efforts to promote "diversity and equal opportunity." FAC ¶ 13. Plaintiff's own complaint therefore confirms that the DEI statement relates to the "official duties" of the job under *Garcetti*.

Even the cases Plaintiff cites support that conclusion. In *Wetherbe*, the Fifth Circuit interpreted *Garcetti* to extend to speech concerning a broad array of topics and in no way suggested that topics that might be considered "political" were off limits. *Wetherbe v. Smith*, 593 F. App'x 323, 329 (5th Cir. 2014). Just the opposite: The Fifth Circuit went on to explain that employers could permissibly ask about topics such as "leadership philosophy," "opinion[s] on issues that are central to the operation and mission of the institution, and other concerns that will allow the interviewers to gauge whether the applicant will be an effective employee." *Id.* That rule from the Fifth Circuit arguably sweeps even more broadly than speech that directly concerns the official duties of the job, but reaches all speech that might assist the employer in evaluating the applicant's ability to perform those "official duties." *See id.* There is no need to go so far here, since Plaintiff's allegations confirm that the DEI statement relates to the official duties of faculty positions at UC Santa Cruz.

Plaintiff's reliance on *Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000), is equally misplaced. Although *Worrell* predates *Garcetti*, it too undermines Plaintiff's argument. Applying the then-controlling and far more plaintiff-friendly *Pickering* standard, the Tenth Circuit held that a drug agency task force could withdraw a job offer based on truthful testimony the plaintiff gave as a defense expert about arrest procedures based on a concern that his testimony would cause internal disruption within the force and with other law enforcement agencies. *Id.* at 1207–09. Thus, *Worrell* supports the even broader proposition that an employer may evaluate prospective employees' speech in its own right and based on the effect of that speech on the prospective employee's interactions with others in the workplace.

Unable to show that the DEI statement requirement does not relate to the University's interest in evaluating the applicant's ability to perform the "official duties" of the position, Plaintiff argues that *Garcetti* does not apply because those official duties are somehow unlawful or improper. Opp. at 16–17. But *Garcetti* contains no such limitation, nor does Plaintiff explain why one should exist. If a public entity has a program that is substantively unlawful, it can be challenged on that basis, but it does not mean that all public employee speech related to that program is retroactively deemed to be outside of "official duties." Plaintiff's argument that UCSC's DEI activities (and related expectations of DEI competency by faculty) somehow violate students' rights under the U.S. and California Constitutions' prohibitions on discrimination is clearly a circular and improper attempt to attack DEI activities via a plaintiff who has no standing to challenge them directly. Plaintiff is not a student or faculty member at UCSC and has offered no explanation for why—with respect to UCSC's on-campus treatment of its students—his is anything other than the kind of "generalized grievance" that courts cannot hear. *See Carney*, 141 S. Ct. at 502. And in any event, though Plaintiff has alleged that faculty are encouraged to promote "diversity and equal opportunity" once hired, Plaintiff has not plausibly alleged *anything at all* about the actual DEI activities that take place at UCSC or anything improper about such activities. He therefore offers no basis to conclude that UCSC's practices violate the law or are otherwise improper.

In any event, Plaintiff's argument that that the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141, 2175 (2023) ("*SFFA*"), somehow makes it unlawful or improper for the university to "actually . . . expect" its employees to perform DEI-related job duties is also wrong. This grossly misreads *SFFA*. While the decision is specific to the admissions process, *SFFA* expressly endorsed schools' ability to evaluate students based on a student's account of how their race or ethnicity might relate to their "unique ability to contribute" to campus life and beyond. *Id.* at 2175. *SFFA* is therefore not at all inconsistent with the conclusion that the DEI statement requirement relates to UCSC's ability to evaluate an applicant's ability to perform their official duties, which includes mentoring, advising, and writing letters of recommendation for UCSC's diverse population of students.

The other viewpoint discrimination cases that Plaintiff cites similarly fail to support his argument. *Shelton v. Tucker* concerned compelled disclosure of all of a teacher's organizational affiliations in the past year. 364 U.S. 479, 483, 488 (1960) (cited in Opp. at 15). But in *Shelton* the court struck down the compelled disclosure law not because schools could not inquire about organizational affiliations, but because it swept *too broadly* and would necessarily compel disclosure of affiliations that were unrelated to a teacher's fitness to teach. *Id.* at 488. *Perry v. Sindermann* is inapposite because the statements there were made at public hearing at which the plaintiff had nominally appeared in his private capacity rather than, as here, in a context facially related to the plaintiff's prospective employment. 408 U.S. 593 (1972). And *National Endowment for the Arts v. Finley*, rather than supporting Plaintiff's position, underscores that government *may* use relevant content-based criteria when awarding government benefits via a competitive selection process. *See* Mot. at 13 (discussing *NEA v. Finley*, 524 U.S. 569, 585 (1998)). In any event, *Finley* is not an employment case, did not find a First Amendment violation, and instead merely suggested in dicta that it was theoretically possible that the government could give grants and awards in a manner that amounted to the "a penalty on disfavored viewpoints." 524 U.S. at 586–87. Plaintiff identifies no case finding a violation on such a theory. And all these cases predate *Garcetti* so they cannot possibly be read to illuminate

the breadth of the essential question here: whether the DEI statement is speech related to "official duties" under that precedent.

Plaintiff cannot dodge this key question by conclusorily recasting the DEI statement as a "political litmus test." *See* Opp. at 12–13. That rhetorical device has no legal significance and Plaintiff cites no case suggesting it does. As explained in the motion to dismiss, many jobs across the public sector, including in universities, often require employees to perform tasks (e.g., administer a vaccine) that some in society might associate with a particular "political" view. Mot. at 20–21. As a result, public sector employers rightfully and necessarily often ask job applicants questions that have some political dimension: for example, a college or university's sustainability office might ask questions that implicate an applicant's views on climate change or nuclear energy. A health center might ask applicants questions about their competencies around sexual health education that implicate contested ideas about abstinence-only sex education or consent. Stripped of rhetoric, Plaintiff's argument amounts to an astounding and wrong-headed assertion that job application questions somehow violate the First Amendment if they touch on controversial or ideologically inflected topics, even when those topics are relevant to the longstanding expectations of employers about the job functions an employee will perform. That would flip *Garcetti* on its head.

            (b)      The DEI Statement Requirement, as Alleged, Does Not Relate to Teaching and Academic Writing

Because the DEI requirement relates to the "official duties" of faculty, Plaintiff's claim must be dismissed unless Plaintiff has alleged that the DEI statement requirement "relat[es] to scholarship or teaching." *See Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014) (quotations omitted). He has not. As noted in the motion to dismiss, Plaintiff's *own allegations* characterize the DEI statement and the faculty duties it relates to as distinct from teaching and academic writing. Mot. at 16–17 (quoting FAC ¶¶ 13–14). Plaintiff does not address that argument because he cannot. *See* Opp. at 17–18.

Plaintiff also either ignores or badly distorts the other two Court of Appeals cases Defendants relied on in construing the "scholarship or teaching" exception. Plaintiff never

mentions the Ninth Circuit's decision in *Sullivan v. University of Washington*, 60 F.4th 574, 582 n.6 (9th Cir. 2023), which held that university service activities—including performing research oversight—do not relate to scholarship and teaching under *Demers*. And Plaintiff profoundly downplays the similarities between this case and *Porter v. Board of Trustees of North Carolina State University*, 72 F.4th 573, 578 (4th Cir. 2023). In *Porter*, the plaintiff, a public university professor whose objections to DEI initiatives were widely known in his department, objected in a faculty meeting to adding a question about diversity to student evaluations. *Id.* The Fourth Circuit held this was not "speech related to scholarship and teaching." *Id.* at 583. When objecting to a diversity question in course evaluations, the plaintiff "was not teaching a class nor was he discussing topics he may teach or write about as part of his employment." *Id.* Though he did invoke the fact that "survey methodology was his personal area of study," that did not "convert the speech . . . into a matter of scholarship." *Id.* Plaintiff here describes the facts of *Porter* as "complaints over office affairs" and "matters of personal interest." In reality, *Porter* mirrors precisely the kind of non-teaching and non-scholarship "official duties" that the DEI statement requirement is used to evaluate. And because the DEI statement requirement takes place in the entirely administrative context of a job application, they are arguably even more attenuated from teaching and academic writing than the faculty member's speech in a faculty meeting related to student evaluations of their professors in *Porter*.

Lastly, Plaintiff contends that DEI statement requirements in general "almost intrinsically involve matters of relevance to academic work" in the "social sciences." Opp. at 17–18. But as the Fourth Circuit held in *Porter*, a professor's job duties are not transformed into speech related to teaching and writing simply because the professor's area of expertise may in some way be relevant to those duties. 72 F.4th at 583. Such a rule would lead to obviously absurd results: Would scholars who write about race, sex, or sexual orientation have greater rights to make discriminatory statements on those topics in faculty meetings simply because of their research areas? Of course not. Plaintiff's unsupported and unalleged assertion that "issues like race, merit, [and] gender" "intrinsically involve matters of relevance to academic work" in every "social

science"—and thus all speech on that topic "relates to scholarship and teaching" in that field—is no less absurd. Opp. at 17–18.

### 2. *Plaintiff Has Not Adequately Alleged That the DEI Statement Requirement Has or Would Cause Any Adverse Action*

Plaintiff's claim also fails for the independent reason that he does not allege any adverse employment action—much less one caused by the DEI statement requirement. As with standing, Plaintiff contends that his failure to apply is excusable because it would be futile. Opp. at 19–20. Surprisingly, Plaintiff ignores the binding precedent that Defendants cited in their motion demonstrating that Plaintiff's application is not "futile" as a matter of law. *See* Mot. at 9 (discussing *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002); *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 260–61 (9th Cir. 1997); *Bouman v. Block*, 940 F.2d 1211, 1222 (9th Cir. 1991)). Plaintiff instead relies on two other decades-old, out-of-circuit cases, both of which challenged objective selection criteria that those plaintiffs plainly could not satisfy, rendering their applications futile. *See* Opp. at 19 (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (retaliation based on race); *Terry v. Cook*, 866 F.2d 373, 378-79 (11th Cir. 1989) (refusal to rehire civil servants who served under losing incumbent candidate)).[2] Plaintiff therefore fails to state a claim for this independent reason.

### C. **Plaintiff's Unconstitutional Conditions Claim also Fails**

Plaintiff wrongly contends that his unconstitutional conditions argument should be evaluated entirely outside the Supreme Court and Ninth Circuit law defining the contours of the First Amendment in the context of public employment. He offers no support for that assertion.

---

[2] In the third case Plaintiff cites here, *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1206, 1213 (2d Cir. 1993), the plaintiff was told by her supervisor that she "would not be considered for a promotion" due to her "poor performance evaluations" after expressing interest in a promotion. Plaintiff here faced no such categorical bar, nor was any such categorical bar ever expressed by UCSC.

All Plaintiff shows is that for "government benefits" *other than employment* certain conditions cannot be attached. Opp. at 21 (collecting cases from the grant-making and regulatory contexts). But the Supreme Court has repeatedly made clear that, when it comes to the First Amendment, public employment is a unique context, governed by a specific set of rules. *See Garcetti*, 547 U.S. at 418–19. That is because public entities "need a significant degree of control over their employees' words and actions" in carrying out their functions. *Id.* The "control" *Garcetti* recognizes that public employers require necessarily implies some degree of coercion. Public employees often must convey messages that are not exactly the ones they would choose if speaking in their personal capacity. At times, they may even be called upon to express views—whether via speech or conduct—that they do not personally hold because it is part of their job. This, of course, is not even what is happening here because the DEI statement requirement does not compel any particular speech. *See* Mot. at 22.

In any event, Plaintiff agrees that, where the unconstitutional conditions doctrine does apply, a condition is unconstitutional only where it is "by [its] nature" not "within the scope of the program" conferring the benefit. Opp. at 22. For all the reasons already discussed, the DEI statement (the alleged "condition" here) is relevant to assessing an applicant's capacity to perform the job (the "benefit") for which the statement is required. *See supra* p. 8. Thus, even if Plaintiff's proffered legal standard applied here—and it does not—he cannot state a claim.

### III. CONCLUSION

Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint with prejudice.

DATED: September 26, 2023                MUNGER, TOLLES & OLSON LLP

By:      */s/ Bryan H. Heckenlively*
       BRYAN H. HECKENLIVELY
Attorneys for Defendants