UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN D. HALTIGAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL V. DRAKE, et al.,<br><br>　　　　Defendants. | Case No.  5:23-cv-02437-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 23 |

Plaintiff John D. Haltigan brings this action against Defendants university officers to challenge the diversity, equity, and inclusion ("DEI") statements required from prospective faculty candidates by the University of California, Santa Cruz. Plaintiff contends that the University's DEI statement requirement and guidance violate First Amendment principles of academic freedom. Defendants filed a Rule 12(b)(1) motion to dismiss for lack of standing and a Rule 12(b)(6) motion for failure to state a claim, which are fully briefed. ECF Nos. 23 ("Mot."), 29 ("Opp."), 33 ("Reply"). The Court heard oral arguments on November 9, 2023.

Based on the parties' written submission and oral arguments, the Court GRANTS Defendants' Rule 12(b)(1) motion and DISMISSES the Complaint WITH LEAVE TO AMEND.

**I.　BACKGROUND**

　**A.　Parties**

Plaintiff John D. Haltigan holds a Ph.D. in Developmental Psychology from the University of Miami and was previously an Assistant Professor in the Department of Psychiatry at the University of Toronto. Am. Compl. ("Compl.") ¶ 7, ECF No. 13. Plaintiff has also served as a postdoctoral fellow at the University of Illinois, Urbana-Champaign; the University of North

1   Carolina, Greensboro; and the University of Ottawa.  *Id.* ¶ 59.  As of the Complaint's filing, he is

2   seeking employment in psychology departments across the country.  *Id.* ¶¶ 7, 65.

3         Defendants Michael V. Drake, Cynthia K. Larive, Benjamin C. Storm, and Katharyne

4   Mitchell are all sued in their official capacities at the University of California (the "University") or

5   the University of California, Santa Cruz ("UC Santa Cruz").  Compl. ¶¶ 8–11.

      **B.**      **Diversity, Equity, and Inclusion ("DEI") Statements at UC Santa Cruz**

      Around 2016, the University of California established the Advancing Faculty Diversity ("AFD") program to support projects that increase racial and gender balance on the University campuses.  Compl. ¶¶ 18–19.  The AFD-funded pilot program at UC Santa Cruz encouraged search committees to use DEI statements in the faculty selection process and engage in more in-depth discussion with applicants about their statements.  *Id.* ¶ 29.  The Complaint alleges that, over time, UC Santa Cruz began to place more emphasis on faculty candidates' diversity statements (which the Complaint refers to as the "Initial Screening Requirement") and promulgated detailed rubrics for evaluating diversity statements.  *Id.* ¶¶ 33–34.

      The UC Santa Cruz Office of Academic Personnel ("APO") publishes information to candidates about how DEI statements are evaluated.  Compl. ¶¶ 36–37.  Specifically, APO evaluates DEI statements under three broad categories: (1) awareness, (2) experience, and (3) future plans at UC Santa Cruz.  *Id.* ¶ 39.  The Complaint also alleges that APO publishes a "starting rubric" that purportedly assigns high scores for applicants' DEI statements that express certain sociopolitical ideas and low scores for those that express otherwise.  *Id.* ¶¶ 42–46.  The APO's website also provides a list of "common myths" about DEI faculty recruitment and a page for Resources on Antiracism.  *Id.* ¶¶ 47–51.  These requirements apply to every faculty job opening at UC Santa Cruz.  *Id.* ¶ 55.

      Plaintiff alleges that the combined result of the DEI statement requirement and the Initial Screening Requirement is that "applicants who fail to demonstrate conformity with the beliefs and ideology represented on the APO website know that their application is futile."  Compl. ¶¶ 56–57.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS

### C. UC Santa Cruz July 2022 Open Position

On July 21, 2022, UC Santa Cruz posted an open hiring announcement for a tenure-track position in Developmental Psychology. Compl. ¶ 66. The Psychology Department requires a DEI statement in order to apply and "urges" candidate to review the scoring rubric published by APO. *Id.* ¶ 67. The position also indicated that an "initial screening of candidates will be performed using only the DEI statement and a research statement." *Id.* ¶ 68.

Plaintiff alleges that he "desires a position at the University" but that the DEI statement requirement makes his application futile, due to his views on "colorblind inclusivity," "viewpoint diversity," and "merit-based evaluation." *Id.* ¶ 69. Plaintiff further alleges that, if he were to apply for the July 2022 opening or any other openings at UC Santa Cruz, he would be "compelled to alter his behavior and either remain silent . . . or recant his views to conform to the dictates of the University administration." *Id.* ¶ 70. Plaintiff does not allege that he applied or prepared any application materials for the July 2022 opening.

### D. Procedural History

Plaintiff filed his initial complaint on May 18, 2023. ECF No. 1. That complaint alleged that the July 2022 position was an "open position" and sought preliminary injunctive relief to enjoin the University from enforcing the DEI statement requirement against Plaintiff. *Id.* at 12. On June 19, 2023, Plaintiff filed the present Amended Complaint, omitting the allegations that the position was open and referencing the July 2022 position only as an example. Compl. ¶ 66.

On August 7, 2023, Defendants filed the instant motion to dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Mot. 1. The Court heard oral arguments on November 9, 2023.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder." *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020); *see also Henderson*

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS

*ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction"). To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack on jurisdiction, the Court "need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039.

## III. DISCUSSION

The Complaint asserts two First Amendment claims, one for unconstitutional conditions and the other for viewpoint discrimination. Compl. ¶¶ 71–85. In their Rule 12(b)(1) motion to dismiss, Defendants assert a facial attack on Plaintiff's standing to bring either of his two claims. Mot. 7–12. Because "[s]tanding is a threshold matter of jurisdiction," the Court must first assure itself that Plaintiff has "standing and that jurisdiction otherwise exists before [it] review[s] the merits." *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)).

Defendants attack Plaintiff's standing on two grounds: first, his alleged injury is not "actual or imminent," because the Complaint only expresses "some day intentions" to apply without any allegations regarding an "imminent" open position; and second, Plaintiff's alleged

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
4

injury is not "concrete and particularized," because he never submitted himself to the application process he seeks to challenge. Mot. 7–8.

As a general premise, there is a "long-established rule" that a plaintiff "lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.'" *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1149–50 (9th Cir. 2006) (citing *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (collecting cases)). Because the Complaint indisputably does not allege that Plaintiff "submitted himself by actually applying for the desired benefit," Plaintiff attempts to overcome this standing obstacle in three parts: (1) he invokes the "competitor standing" doctrine, which confers standing on a plaintiff that is "able and ready" to apply or compete, Opp. 5–9; (2) he argues that First Amendment rights can be vindicated without engaging in or risking a challenged course of conduct, Opp. 9–10; and (3) any application submitted would have been futile, Opp. 19.

### A.   Competitor Standing

First and foremost, Plaintiff relies extensively on *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.* ("*Planned Parenthood*"), 946 F.3d 1100 (9th Cir. 2020), for the doctrine of "competitor standing." Under this doctrine, a plaintiff may challenge a selection process without having applied himself, so long as the plaintiff "demonstrate that it is 'able and ready to bid.'" *Id.* at 1108. This doctrine reasons that "the injury is the increase in competition rather than the ultimate denial of an application, the loss of sales, or the loss of a job." *Id.*

The primary paragraphs that Plaintiff cites in support of his ability and readiness (*see* Opp. 5) are paragraphs 69 and 70 of the Complaint, where he alleges that the DEI Statement requirement renders his application "futile," that his viewpoints "make it impossible for him to truthfully compete for a faculty position," and he would be "compelled to alter his behavior and either remain silent . . . or recant his views" if he were to apply. Compl. ¶¶ 69–70. Putting aside the fact that many of these statements are conclusory in nature, almost all of them relate to the University's challenged practices instead of Plaintiff's own ability and readiness.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
5

Rather than identify allegations that he is "ready and able," Plaintiff instead attempts to compare his facts to those in *Planned Parenthood*. Opp. 7–8. However, the unambiguous bidding requirements challenged in *Planned Parenthood* are readily distinguishable from the "starting rubric" and DEI publications on the UC Santa Cruz website. Critically, in *Planned Parenthood*, the plaintiff had specifically alleged "how the [funding opportunities] each *allotted at least a quarter* of a grant applicant's scoring rubric to the implementation of one of the two tools." 946 F.3d at 1109 (emphasis added). Here, although Plaintiff references the APO's "starting rubric" and how it assigns higher scores to certain viewpoints in the DEI statements (Compl. ¶¶ 42–46), there are no allegations that candidates *must* receive some threshold score as a "requirement" for UC Santa Cruz's openings or that a "high" score would even accord a candidate any competitive advantage. The competitive injury (if any) inferable from UC Santa Cruz's "starting rubric" is much more abstract and speculative than the allegations in *Planned Parenthood*. And in any event, a comparison of the two bidding and application processes provides limited insight into the primary inquiry for competitor standing, whether *Plaintiff* is "ready and able" to apply.

The only statement in the Complaint that bears on Plaintiff's ability and readiness is the allegation that "he desires a position at the University." *Id.* ¶ 69. The Supreme Court, however, has been reluctant to find competitor standing where a plaintiff relies "on a bare statement of intent alone against the context of a record that shows nothing more than an abstract generalized grievance." *Carney v. Adams*, 592 U.S. 53, 65–66 (2020). In *Carney*, the Supreme Court found that a plaintiff lacked competitor standing when he had only expressed a general interest in an open judgeship, "without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence." *Id.* at 63. Even though the Supreme Court did not completely foreclose the possibility that a "statement of intent" could suffice for standing, it found that the plaintiff's words of intent alone—such as Plaintiff's expressed "desires" for a position with the University—were insufficient on that particular record. *Id.* at 64. The Supreme Court also indicated that the record

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS

6

should reflect "at least some evidence that, e.g., [the plaintiff] had applied in the past [and] there were regular opportunities available with relevant frequency." *Id.* at 65–66. The allegation in the Complaint, however, falls short of this showing.

Plaintiff attempts to distinguish *Carney* by highlighting the fact that there was previously an "actual job that he was qualified for and that he wanted." Opp. 7. First, although the Court agrees that the existence of a previous open position is somewhat relevant, it is overshadowed by the fact that Plaintiff *did not* apply to that position.[1] *See generally* Compl. ¶¶ 66–70; *see also Carney*, 592 U.S. at 65–66 (emphasizing the relevance of evidence that a plaintiff "had *applied* in the past") (emphasis added). Second, the Complaint also does not allege that "there were regular opportunities available with relevant frequency," which was another piece of relevant evidence that *Carney* had identified. 592 U.S. at 66. Plaintiff attempts to overcome this deficiency by arguing that the "University is constantly hiring and will inevitably post (another) job opening that Dr. Haltigan is qualified for." Opp. 10. However, this is alleged nowhere in the Complaint and, even if it was, is the type of floating "some day" speculation that does not support a finding of "actual or imminent" injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). The only other relevant allegations of future opportunities are that there was an open UC Santa Cruz position in July 2022 and an open position in 2013, which is a far cry from evidence of "*regular* opportunities available with *relevant* frequency." *Carney*, 592 U.S. at 66.

Third and most broadly, the Complaint does not allege that Plaintiff had undertaken *any* preparations in anticipation of applying to either the July 2022 UC Santa Cruz position or any future UC Santa Cruz positions. *See Carney*, 592 U.S. at 63–64; *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 207 (3d Cir. 2021) ("[I]n most cases, a plaintiff will need to plead that he or she took some *actual steps* that demonstrate a real interest in seeking the alleged

---

[1] Although Plaintiff indicated that he had previously applied to UC Santa Cruz in 2013, that prior application would not have been made under the application process that Plaintiff is challenging in this suit. Compl. ¶¶ 17–27 (alleging that the University only began emphasizing DEI at earliest in 2015). Plaintiff's 2013 application, therefore, sheds little light onto whether he is "able and ready" at the time of the Complaint, ten years later and under a substantively different application regime.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
7

benefit.") (emphasis added).  For instance, the Complaint alleges that the University will initially screen candidates "using only the DEI statement *and a research statement*," Compl. ¶ 68 (emphasis added), but it does not allege that Plaintiff prepared such a research statement or made any "other preparations or investigations" into the open position.  The Complaint also does not contain any allegations about Plaintiff's "actual past injury," any "reference to an anticipated timeframe," any "prior relevant conversations" about applying to UC Santa Cruz, or any "efforts to determine likely openings" at UC Santa Cruz—all of which were relevant considerations that led the Supreme Court to find that a plaintiff was not "able and ready" to apply.  *Carney*, 592 U.S. at 63.  Without any allegations about the actual preparatory steps that Plaintiff undertook, the Court cannot find Plaintiff to be more "able and ready" than the plaintiff in *Carney*, who had at least re-activated his bar membership in anticipation of applying for the judgeship.  *Id.* at 63.

In addition to Plaintiff's cited paragraphs and presented arguments, the Court also notes that the Complaint alleges that Plaintiff is "currently actively seeking jobs in academia and has applied to positions at other universities with less stringent DEI requirements."  *Id.* ¶ 65.  This factual allegation is reiterated in Plaintiff's supplementary declaration that in the "course of [his] job search, [he had] applied to several jobs with less discriminatory DEI statement requirements than UC Santa Cruz" and that he had "also applied to UC Santa Cruz in the past, in 2013."[2] Haltigan Decl. ¶¶ 10–11, ECF No. 30.  Although this is a relevant consideration in evaluating Plaintiff's ability and readiness to apply, the Court finds that an allegation that Plaintiff is generally in the national market for a position in the academy is not sufficiently imminent or concrete to establish an injury-in-fact arising from UC Santa Cruz's specific application process.

Accordingly, the Court finds that Plaintiff has not alleged that he is "able and ready" to apply and, therefore, may not invoke "competitor standing" to satisfy subject matter jurisdiction.

---

[2] In determining constitutional standing, the Court must consider any additional allegations by amendment or affidavits.  *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (reversing dismissal where district court erroneously applied the Rule 12(b)(6) standard in dismissing for lack of constitutional standing).

### B. First Amendment Prudential Considerations

In addition to "competitor standing," Plaintiff also cites a line of First Amendment cases for the proposition that he does not need to "subject himself to unconstitutional compelled speech" to challenge the DEI statement requirements under the First Amendment. Opp. 9–10.

As a legal matter, it is unclear whether this Court should even consider special First Amendment standing issues in the context of a Rule 12(b)(1) motion. Specifically, the relaxed First Amendment standing requirements do not originate from Article III but rather appear to be creatures of prudential standing. *See, e.g.*, *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) ("Within the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of *prudential limitations on standing*.") (emphasis added); *Canatella v. State of California*, 304 F.3d 843, 853 (9th Cir. 2002) ("[I]n recognition that 'the First Amendment needs breathing space,' the Supreme Court has relaxed the *prudential* requirements of standing in the First Amendment context."); *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (same); 1 Ronald D. Rotunda, John E. Nowak, *Treatise on Constitutional Law*, § 2.13(f)(iii)(2) ("In the First Amendment area, *prudential* barriers are lower.") (emphasis added).

The distinction between Article III standing and prudential standing is relevant here because, "district courts in this circuit consider challenges to prudential standing in the context of motions to dismiss under Rule 12(b)(6), *not under Rule 12(b)(1)*." *SurvJustice Inc. v. DeVos*, 2019 WL 1434141, at *4 (N.D. Cal. Mar. 29, 2019) (emphasis added) (collecting cases); *cf. 4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 (9th Cir. 1999) ("[The] slender overbreadth *exception to the prudential limits on standing does not affect the rigid constitutional requirement* that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction.") (internal brackets and ellipses omitted) (emphasis added). The rationale for this practice is especially evident in this case, where Plaintiff relies on prudential standing cases that involve uniquely First Amendment facts and would call for a substantive and almost merits inquiry unique to licensing and permitting schemes, as opposed to a more jurisdictional standing and injury-in-fact analysis.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
9

1 In any event, even if the Court could consider Plaintiff's First Amendment prudential standing case law, their application to the present case is tenuous at best, an observation Plaintiff himself acknowledges. Opp. 10 (recognizing that "Dr. Haltigan is not seeking a license or a permit"). The cases cited by Plaintiff—*Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022 (9th Cir. 2006); *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002 (9th Cir. 2003); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988)—all involve First Amendment challenges to a municipality's permitting or licensing scheme, not a competitive application or bidding process. These opinions also expressly acknowledge that it was the discretionary permitting framework that implicated the First Amendment concerns and gave rise to the special standing analysis. *See Santa Monica*, 450 F.3d at 1033 (noting that "special standing principles apply in First Amendment cases" relating to facial and as-applied challenges); *Arizona Right to Life*, 320 F.3d at 1006 ("Constitutional challenges based on the First Amendment present unique standing considerations."); *City of Lakewood*, 486 U.S. at 755–56 ("[O]ur cases have long held that *when a licensing statute allegedly vests unbridled discretion in a government official* over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."). None of the special First Amendment considerations in *Santa Monica*, *Arizona Right to Life*, *City of Lakewood* are present here, and the Court is unpersuaded by Plaintiff's attempt to equate First Amendment concerns implicated by a public speech licensing regime with those in a job application.

In short, the Court does not find that Plaintiff's First Amendment prudential standing argument is properly raised in response to a Rule 12(b)(1) motion and, even if it is, his cited cases do not support applying those prudential standing principles in this case.

**C. Futility**

Finally, although Plaintiff does not directly contend that he should be excused from applying for standing purposes because any application would have been futile, he raises futility in other sections of the opposition, as well as in the Complaint. Opp. 19; *see also* Compl. ¶¶ 3, 56, 69; *Carney*, 592 U.S. at 66 ("[O]ur precedents have also said that a plaintiff need not translate his

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
10

1   or her desire for a job . . . into a formal application where that application would be merely a futile

2   gesture.") (cleaned up); *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) ("We have

3   consistently held that standing does not require exercises in futility.").

4         To the extent that Plaintiff is seeking to argue futility as a means of overcoming the

5   obstacle that he had never submitted himself to the process he now challenges,[3] the facts alleged in

6   the Complaint does not support a finding that the University's policies "unambiguously rendered

7   [his] application futile." *Pizzo v. City & Cnty. of San Francisco*, 2012 WL 6044837, at *15 (N.D.

8   Cal. Dec. 5, 2012). The subjective selection process alleged in the Complaint is analogous to the

9   one at issue in *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146. The teacher plaintiff in

10  *Friery* challenged a school district's faculty transfer policy that prohibited transfers that would

11  "move the destination school's ratio of white faculty to nonwhite faculty too far from LAUSD's

12  overall ratio." *Id.* at 1147–48. The Ninth Circuit found that plaintiff did not have standing

13  because he did not actually submit a transfer application and, therefore, it was "uncertain whether

14  the Transfer Policy would have affected [the plaintiff]." *Id.* at 1149 ("It may well be that had

15  [plaintiff] applied for a position at the [transferee school], the school might have accepted his

16  application on the basis of dire need, excellent qualifications, or any other reason."). Likewise,

17  here, it may well have been the case that, had Plaintiff applied for the July 2022 open faculty

18  position, UC Santa Cruz might have accepted his application of the basis of his standalone

19  excellent qualifications or especially relevant research background.

20        The Ninth Circuit in *Friery* also remarked that the plaintiff's contention that a formal

21  transfer application would have been futile "assumes too much" about the subjective transfer

22  process. *Id.* at 1149–50 ("[T]hese facts represent the quintessence of conjecture and speculation—

23  realms where our jurisdiction to entertain suit may cease."). Here, the faculty candidate

24  consideration process is even more subjective and less concrete than the one challenged in *Friery*

---

[3] Plaintiff is correct that he does not need to plead futility if he can demonstrate that he is "able and ready" under the doctrine of "competitor standing." Opp. 8 n.1. The Court's discussion of futility is distinct from and does not bear upon its "competitor standing" analysis.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS

11

because, there, the plaintiff was at least directly told that he "would not be eligible for the transfer because he was . . . of 'the wrong ethnic origin.'" *Id.* at 1147. The present Complaint alleges no such direct and disqualifying consideration stemming from an applicant's DEI statement.

In short, although futility could excuse the fact that Plaintiff never applied to the process he now challenges, the Court does not find that the Complaint has sufficiently alleged futility.

\* \* \*

In summary, because Plaintiff does not allege that he subjected himself to the process that he now seeks to challenge in federal court, he is subject to the general "long-established rule 'that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.'" *Friery*, 448 F.3d at 1149. Plaintiff cannot invoke "competitor standing" because the Complaint does not allege that he is "able and ready" to apply; his First Amendment prudential arguments have limited, if any, application to the Article III standing inquiry; and the Complaint allegations do not support a finding of futility. Therefore, Plaintiff has failed to demonstrate standing to bring his First Amendment claims.

The Court GRANTS Defendants' Rule 12(b)(1) motion to dismiss the Complaint. However, because the Court's analysis here turns on pleading deficiencies with respect to competitor standing and futility, the Court cannot determine that further amendment would be futile. Accordingly, the Complaint shall be DISMISSED WITH LEAVE TO AMEND.

### IV. CONCLUSION

Based on the foregoing, Defendants' Rule 12(b)(1) motion to dismiss the Complaint is GRANTED. The Complaint is DISMISSED WITH LEAVE TO AMEND. Any amended complaint SHALL be filed by February 2, 2024.

**IT IS SO ORDERED.**

Dated: January 12, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
12