1  BRYAN H. HECKENLIVELY (State Bar No. 279140)
   Bryan.Heckenlively@mto.com
2  JOHN B. MAJOR (State Bar No. 306416)
   John.Major@mto.com
3  JING JIN (State Bar No. 343210)
   Jing.Jin@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
5  San Francisco, California 94105-2907
   Telephone:    (213) 683-9100
6  Facsimile:    (213) 687-3702

7  CHARLES F. ROBINSON (State Bar No. 113197)
   RHONDA GOLDSTEIN (State Bar No. 250387)
8  KATHARINE ESSICK (State Bar No. 219426)
   KIMBERLY ROBINSON (State Bar No. 332441)
9  Kimberly.A.Robinson@ucop.edu
   UNIVERSITY OF CALIFORNIA
10 Office of the General Counsel
   1111 Franklin Street, 8th Floor
11 Oakland, CA 94607-9800
   Telephone:    (510) 987-9800
12 Facsimile:    (510) 987-9757

13 Attorneys for Defendants

14 * Additional counsel listed on following page.

15                 UNITED STATES DISTRICT COURT

16       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17

18 JOHN D. HALTIGAN,                        Case No. 5:23-cv-02437-EJD

19              Plaintiff,                   **DEFENDANTS' MOTION TO DISMISS
                                             SECOND AMENDED COMPLAINT**
20        vs.

21 MICHAEL V. DRAKE, in his official capacity   Judge:   Hon. Edward J. Davila
   as President of the University of California;
22 CYNTHIA K. LARIVE, in her official            Date:    May 9, 2024
   capacity as Chancellor of UC Santa Cruz;      Time:    9:00 a.m.
23 BENJAMIN C. STORM, in his official            Courtroom: 4
   capacity as Chair of the UC Santa Cruz
24 Psychology Department; and KATHARYNE
   MITCHELL, in her official capacity as Dean
25 of the UC Santa Cruz Division of Social
   Sciences,
26
                Defendants.
27

28

1   HELEN E. WHITE (*pro hac vice*)
    Helen.White@mto.com
2   MUNGER, TOLLES & OLSON LLP
    601 Massachusetts Ave NW, Ste. 500E
3   Washington, District of Columbia 20001-5369
    Telephone:     (202) 220-1136
4   Facsimile:      (202) 220-2300

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

STATEMENT OF RELIEF SOUGHT ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................1

I.      INTRODUCTION ..........................................................................................1

II.     PLAINTIFF'S ALLEGATIONS...................................................................2

        A.      The University of California's Commitment to Diversity and Inclusion..................2

        B.      UC Santa Cruz's Use of DEI Contribution Statements for Hiring Psychology Department Faculty .......................................................3

        C.      Plaintiff's Decision Not to Apply for a Position at UC Santa Cruz ...........4

III.    PROCEDURAL HISTORY ...........................................................................6

IV.     LEGAL STANDARD ....................................................................................7

V.      ARGUMENT ..................................................................................................7

        A.      All Claims Should Be Dismissed Because Plaintiff Lacks Standing........7

                1.      Plaintiff Has Not Alleged Any Injury in Fact .......................8

                        (a)     Plaintiff Has Not Alleged an "Imminent" Injury ...........8

                        (b)     Plaintiff's Alleged Injury Is Insufficiently "Concrete" ..........9

                2.      Plaintiff Has Not Alleged an Injury Caused by the DEI Contribution Statement Requirement ...............................12

        B.      Plaintiff Fails to State a First Amendment Viewpoint Discrimination Claim .........14

                1.      The DEI Contribution Statement Requirement Does Not Implicate Protected Speech. ...............................................15

                        (a)     The DEI Contribution Statement Is Not Protected Speech Under *Garcetti*..............................16

                        (b)     Plaintiff Cannot Avoid *Garcetti* by Claiming the DEI Contribution Statement Requirement Relates to Scholarship or Teaching............................19

                2.      Plaintiff Has Not Alleged Any Adverse Employment Action ...............20

                3.      Plaintiff Has Failed to Plausibly Allege that Any Viewpoint of His Was a "Substantial or Motivating Factor" for Any Adverse Employment Action. ...........................21

        C.      Plaintiff Fails to State a Claim for Unconstitutionally Compelled Speech.............24

MOTION TO DISMISS SECOND AMENDED COMPLAINT

VI.     CONCLUSION ........................................................................................................25

MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Fed'n of Teachers v. DeVos*,
   484 F. Supp. 3d 731 (N.D. Cal. 2020) ......................................................................................7

*Am. Legion v. Am. Humanist Ass'n*,
   139 S. Ct. 2067 (2019) ..............................................................................................................8

*Ark. Educ. Television Comm'n v. Forbes*,
   523 U.S. 666 (1998) .................................................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................7

*Bonds v. Milwaukee Cnty.*,
   207 F.3d 969 (7th Cir. 2000) ..............................................................................................15, 16

*Bradley v. T-Mobile US, Inc.*,
   2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ........................................................................14

*Bras v. Cal. Pub. Utils. Comm'n*,
   59 F.3d 869 (9th Cir. 1995) .....................................................................................................10

*Buxton v. Kurtinitis*,
   862 F.3d 423 (4th Cir. 2017) ...................................................................................................17

*Carney v. Adams*,
   592 U.S. 53 (2020) ...................................................................................................................11

*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ...................................................................................................14

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) ...................................................................................................25

*Coszalter v. City of Salem*,
   320 F.3d 968 (9th Cir. 2003) ..............................................................................................14, 20

*Demers v. Austin*,
   746 F.3d 402 (9th Cir. 2014) ..............................................................................................15, 19

*Dunnet Bay Constr. Co. v. Borggren*,
   799 F.3d 676 (7th Cir. 2015) ...................................................................................................13

*Friery v. Los Angeles Unified Sch. Dist.*,
   448 F.3d 1146 ..............................................................................................................6, 9, 11, 12

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) .......................................................................................... 1, passim

*Hubbard v. EPA*,
   949 F.2d 453 (D.C. Cir. 1991) ...........................................................................15, 16

*Keeton v. Anderson-Wiley*,
   664 F.3d 865 (11th Cir. 2011)...........................................................................17, 25

*Klaassen v. Trs. of Ind. Univ.*,
   7 F.4th 592 (7th Cir. 2021)........................................................................................25

*Kortan v. Cal. Youth Auth.*,
   217 F.3d 1104 (9th Cir. 2000)...................................................................................20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................8, 9, 12

*Lyons v. England*,
   307 F.3d 1092 (9th Cir. 2002)............................................................................20, 21

*Matal v. Tam*,
   582 U.S. 218 (2017) ..........................................................................................2, 15

*Nat'l Endowment for Arts v. Finley*,
   524 U.S. 569 (1998) ..........................................................................................15, 17

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012)......................................................................................12

*Oyama v. Univ. of Haw.*,
   813 F.3d 850 (9th Cir. 2015).................................................................14, 15, 16, 17

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007) ..................................................................................................10

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013)...............................................................................13, 18

*Pizzo v. City & Cnty. of S.F.*,
   2012 WL 6044837 (N.D. Cal. Dec. 5, 2012) ...........................................................11

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*,
   946 F.3d 1100 (9th Cir. 2020).....................................................................................10

*Porter v. Bd. of Trs. of N.C. State Univ.*,
   72 F.4th 573 (4th Cir. 2023).......................................................................................19

*Regents of Univ. of Mich. v. Ewing*,
    474 U.S. 214 (1985) .................................................................................................2, 15

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988) ............................................................................................................24

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .............................................................................................7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    143 S. Ct. 2141 (2023) ...............................................................................................18, 23

*Sullivan v. Univ. of Wash.*,
    60 F.4th 574 (9th Cir. 2023) ..............................................................................................19

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .........................................................................................................7

*Turner v. City & Cnty. of S.F.*,
    788 F.3d 1206 (9th Cir. 2015) ...........................................................................................14

*United States v. Am. Library Ass'n, Inc.*,
    539 U.S. 194 (2003) ............................................................................................................17

*Villa v. Maricopa Cnty.*,
    865 F.3d 1224 (9th Cir. 2017) .............................................................................................8

*W. Marine Prods., Inc. v. Nat'l Union Fire Ins. of Pittsburgh*,
    572 F. Supp. 3d 841 (N.D. Cal. 2021) ................................................................................7

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ...........................................................................................13

*Wetherbe v. Smith*,
    593 F. App'x 323 (5th Cir. 2014) ......................................................................2, 15, 16, 25

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ...............................................................................................7

*Worrell v. Henry*,
    219 F.3d 1197 (10th Cir. 2000) ...................................................................................15, 16

**FEDERAL STATUTES**

20 U.S.C. § 1681(a) ................................................................................................................24

42 U.S.C. § 12132 ..................................................................................................................24

1

**FEDERAL RULES**

2

Fed. R. Civ. P. 12 ........................................................................................................1, 7

3

**CONSTITUTIONAL PROVISIONS**

4

First Amendment.............................................................................. 1, passim

5

**OTHER AUTHORITIES**

6

Brian Soucek, *Diversity Statements*, 55 U.C. Davis L. Rev. 1989 (2022)......................................23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **PLEASE TAKE NOTICE** that on May 9, 2024, at 9:00 a.m. before the Honorable Edward

2   J. Davila, in Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendants

3   will and hereby do move for an order dismissing Plaintiff's Second Amended Complaint with

4   prejudice.   This Motion is based on this Notice of Motion and Memorandum of Points and

5   Authorities, all papers on file, and any authority or argument presented in the reply and at any

6   hearing.

7                          **STATEMENT OF RELIEF SOUGHT**

8   Defendants seek an order dismissing with prejudice all claims in the Second Amended

9   Complaint ("SAC"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

10                     **MEMORANDUM OF POINTS AND AUTHORITIES**

11  **I.     INTRODUCTION**

12  Plaintiff has not addressed—and cannot address—the fundamental problems the Court

13  identified in dismissing his First Amended Complaint ("FAC") for lack of standing.  In his FAC,

14  Plaintiff alleged that he was an unemployed psychology Ph.D. who had never applied to any position

15  at the University of California, Santa Cruz ("UC Santa Cruz" or "the University") requiring him to

16  submit a statement about his contributions to diversity, equity, and inclusion ("DEI").  FAC ¶¶ 7,

17  66–69.  Plaintiff did not even allege that there was currently (or would soon be) such a job to which

18  he *could* apply.  The Court correctly dismissed his claims for lack of standing.  ECF No. 37.  Now,

19  in his third bite at the apple, Plaintiff tries to paper over the jurisdictional deficiency in his ability to

20  bring suit—that he has never suffered any injury due to the DEI contribution statement

21  requirement—by adding allegations and exhibits about his job search more generally.  But none of

22  these new allegations changes the reality that (1) Plaintiff has not applied for any job at UC Santa

23  Cruz, (2) there is not currently an open position for which Plaintiff is qualified, and (3) as a result,

24  he has never been adversely affected by the policy he wishes to challenge.

25  Though there is again no need to reach the merits, Plaintiff's claims fall short there too

26  because he does not allege any constitutionally protected speech.  Under *Garcetti v. Ceballos*, 547

27  U.S. 410, 421 (2006), the First Amendment does not protect speech by public employees "pursuant

28  to their official duties."   And appellate decisions have uniformly extended that principle to

applicants for public employee positions, i.e., the First Amendment does not protect statements that such applicants make related to their ability to carry out the official duties of the position they seek. *See, e.g.*, *Wetherbe v. Smith*, 593 F. App'x 323, 329 (5th Cir. 2014).  To hold otherwise in this case would deprive UC Santa Cruz of the ability to select employees who—as determined via the exercise of the University's discretion—are best able to carry out the University's mission.  The Supreme Court has long recognized that public universities *as institutions* require a degree of "academic freedom"—rooted in the First Amendment—to carry out their missions.  *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985).  The Supreme Court has further recognized that whenever a university "embarks on a course of action, it necessarily takes a particular viewpoint," so "imposing a requirement of viewpoint-neutrality on government speech would be paralyzing."  *Matal v. Tam*, 582 U.S. 218, 234 (2017).  Thus, the First Amendment protects the University's determination that hiring faculty who are able to foster a diverse, equitable, and inclusive environment supports its core mission of providing an excellent education to its richly diverse student body.  Fundamentally, Plaintiff's personal disagreement with DEI contribution statements does not give him a basis to enjoin UC Santa Cruz from using them.  His claims should be dismissed with prejudice based on these multiple, independent grounds, none of which can be cured by further amendment.

## II.   PLAINTIFF'S ALLEGATIONS

### A.   The University of California's Commitment to Diversity and Inclusion

The University of California ("UC") has long been committed to ensuring that members of its faculty will be able to teach and advocate for its richly diverse student body.  *See* SAC ¶¶ 12–13.  In 2005, UC added a section to its Academic Personnel Manual (which sets forth policies applicable to the evaluation of faculty) that encouraged faculty to promote "diversity and equal opportunity."  *Id.* ¶ 13.  This section was designed to reward faculty for promoting equal opportunity and diversity by including those efforts in evaluations for hiring and promotion, but those criteria did not "displace or substitute" other important criteria.  *Id.*  Plaintiff alleges that, as UC Santa Cruz began considering these efforts as part of its faculty evaluations, it also began asking faculty applying to its psychology department to write statements explaining how they have advanced diversity and equal opportunity in their prior jobs and how they would continue to do so as UC faculty.  *Id.* ¶ 14.

1
2

    **B.**      **UC Santa Cruz's Use of DEI Contribution Statements for Hiring Psychology Department Faculty**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

    In the years that followed, the UC Santa Cruz Psychology Department ("Psychology Department") began requiring that DEI contribution statements be considered as part of the first round of review of applications alongside a faculty applicant's research statement.  *See id.* ¶¶ 29–33, 82.  Plaintiff does not allege, though, that the DEI contribution statement has been disqualifying or otherwise dispositive in any faculty search by the Psychology Department (or any other UC Santa Cruz department).  UC Santa Cruz "provides prospective applicants" with "detailed rubrics and guidelines" regarding the evaluation of such statements.  *See id.* ¶¶ 34, 36.  DEI contribution statements are evaluated in three categories: "awareness, experience, and future plans at UC Santa Cruz."  *Id.* ¶ 39.  Plaintiff does not quote from or otherwise make any specific allegations regarding the contents of the rubric.  Instead, Plaintiff alleges that various University websites discuss and define terms like "diversity," "equity," and "inclusion."  Plaintiff does not quote from or otherwise make specific allegations about the substance of these websites, but instead alleges that they describe "diversity" as including "hiring and promoting individuals from specific racial and ethnic groups," *id.* ¶ 37, and "define[] the terms 'diversity,' 'equity,' and 'inclusion' in a specific manner that ensures successful applicants adhere to a particular ideology and worldview," *id.* ¶ 38.  Plaintiff separately alleges that the Psychology Department maintains its own webpage concerning its DEI activities and that that page "embraces without reservation numerous controversial political and ideological perspectives."  *Id.* ¶ 51.  Plaintiff does not make any specific allegations regarding how DEI contribution statements are used in connection with positions within the Psychology Department or in connection with any position to which he might someday apply.

23
24
25
26
27
28

    With respect to the rubric itself, Plaintiff alleges that the "awareness" category evaluates "[i]deas and beliefs that applicants are supposed to convey."  *Id.* ¶ 40.  Plaintiff does not quote or allege with any greater particularity the substance of the criteria contained in the awareness portion of the rubric.  He alleges that "[e]xperience and future plans"—the other two categories—"are evaluated based on an applicant's past or planned contributions to diversity, equity, and inclusion in teaching, research and professional work, and service and professional activities."  *Id.* ¶ 41.  He

alleges that the "activities and contributions applicants are asked to discuss are thinly veiled proxies for particular beliefs that the administration favors." *Id.*  He alleges that the rubric reserves "high scores . . . for those who promise to adhere to a specific world view that requires treating individuals differently according to race" and applicants who believe "race and sex should not be used to judge individuals" receive low scores under the rubric. *Id.* ¶¶ 45–46.  Plaintiff alleges that the criteria used for the DEI contribution statements "have nothing to do with the University's mission, the qualifications for any given tenure-track position, or professional standards for academics." *Id.* ¶ 54.  The DEI contribution statement requirement, he alleges, "has the intent and the effect of driving contrary ideas and viewpoints out of the marketplace of academic hiring." *Id.* ¶ 57.

### C.      Plaintiff's Decision Not to Apply for a Position at UC Santa Cruz

Plaintiff now alleges that he has been engaged in an unsuccessful academic job search since early 2023. *Id.* ¶¶ 58–59.  He alleges that last year, he applied to "more than ten academic jobs," including some in California. *Id.* ¶ 64.  Plaintiff concedes that he did not apply to either of the two job postings in the Psychology Department that the SAC identifies. *See id.* ¶¶ 79, 85.  He makes no allegations about why the DEI contribution statement requirement allegedly deterred him from applying to the University, but not to positions at other institutions requiring such statements to which he did apply. *See id.* ¶ 74.

According to the SAC, many universities "require some sort of statement on diversity." *Id.* ¶ 63.  In fact, Plaintiff alleges that in February 2023, he applied to an academic job requiring a DEI contribution statement and attaches that statement, which he also published in his online Substack newsletter. *Id.* ¶ 74, Ex. F.  Plaintiff's statement describes his "principled stand against the use of the DEI rubric in the Academy," while also explaining his "commit[ment] to colorblind inclusivity, viewpoint diversity, [and] merit-based evaluation." *Id.* ¶¶ 75–76.  Plaintiff states that he "value[s] outreach to underrepresented groups." *Id.* ¶ 76.  He also details his efforts to "treat students and mentees equally, without regard to identity-based characteristics" and that he has mentored "several students from underrepresented minority groups." *Id.* ¶¶ 76, 78.  He notes that his "experience in the mental health field working with adolescents from a variety of ethnic and sociocultural backgrounds has provided [him] with a deep appreciation of the importance of a sensitivity to the

1   social and cultural factors that shape human development." *Id.* Ex. F at 2.  He concludes that he

2   will continue his "biologically and genetically informed research in development psychopathology

3   that addresses questions relevant to disparate outcomes across different ethnic and cultural groups."

4   *Id.* at 4.

5          Plaintiff does not allege that there is any current job opening at UC Santa Cruz for which he

6   is qualified and could apply that requires a DEI contribution statement.  He alleges that in July 2022,

7   the Psychology Department posted a job opening for a tenure-track professor in Developmental

8   Psychology.  SAC ¶ 79.  And he alleges that on September 1, 2023, the Department posted a job

9   opening for a tenure-track position in "quantitative psychology."  *Id.* ¶ 85.  Plaintiff notably does

10  not allege that either job remains open.  *Id.*  And the last review date—i.e., the date on which the

11  Department will collect and review applications—has long passed for both postings.  *See id.* Exs. G

12  (September 19, 2022, for the Developmental Psychology position) & H (October 31, 2023, for the

13  Quantitative Psychology position).  And while Plaintiff alleges that the Psychology Department *as*

14  *a whole* posts openings "on an annual basis," he does not allege that there have been annual openings

15  in his field of Developmental Psychology or that the Psychology Department will imminently seek

16  to fill that position again.  *Id.* ¶ 85.

17         Plaintiff alleges that "his views on DEI rendered an application to UC Santa Cruz futile."

18  *Id.* ¶ 89.  He alleges that another department at another university has self-reported eliminating high

19  percentages of applicants for one faculty search based "solely on the basis of their diversity

20  statements."  *Id.* ¶ 91.  He makes no similar allegation with respect to the Psychology Department.

21  And he continues to acknowledge that other components of his application, including his research

22  statement, would be considered as part of UC Santa Cruz's initial screening.  *Id.* ¶ 82.  He alleges

23  that it is "unlikely" that he "would receive better than a 1–2 on any category of the DEI Rubric," *id.*

24  ¶ 95, while, at the same time, attaching to the SAC a DEI contribution statement that describes his

25  awareness of sociocultural competency, his research experience on disparate outcomes across ethnic

26  groups, and his interest in mentoring students from underrepresented backgrounds.  *See id.* Ex. F.

27

28

### III.   **PROCEDURAL HISTORY**

Plaintiff filed his original complaint on May 18, 2023.  ECF No. 1.  Prior to Defendants' response, Plaintiff filed the FAC.  ECF No. 13.  The primary change to the FAC was to remove Plaintiff's original allegation that the July 2022 job posting for a tenure-track Developmental Psychology professor position remained open.  *Compare* Compl. ¶ 7 *with* FAC ¶ 7.  Defendants moved to dismiss on the ground that Plaintiff lacked standing, as he had neither applied for nor identified any open or soon-to-be-open position for which he was qualified at UC Santa Cruz.  *See* ECF No. 23.  Defendants also moved to dismiss for failure to state a claim because Plaintiff had not alleged that he engaged in any First Amendment protected speech, let alone that he was discriminated against on that basis.  *Id.*

The Court granted Defendants' motion on standing grounds.  ECF No. 37.  The Court held that Plaintiff's injury was not "concrete and particularized" because he had not applied for any position at UC Santa Cruz requiring the DEI contribution statement.  *Id.* at 5.  The Court also held that Plaintiff had failed to satisfy any of the exceptions to the general rule that plaintiffs must submit themselves to the policy they seek to challenge.  *Id.*  The Court first cast doubt on the applicability of "competitor standing" by noting that Plaintiff had made only "abstract and speculative" allegations about any alleged disadvantage created by the DEI contribution statement requirement.  *Id.* at 6.  The Court went on to explain that even if competitor standing could apply, Plaintiff had not satisfied that standard because he had failed to adequately allege that he was "ready and able" to apply for three reasons:  First, Plaintiff did not apply to the prior open positions.  *Id.*  Second, he failed to allege that "there were regular opportunities available with relevant frequency."  Third, he failed to allege that he had undertaken "*any* preparations in anticipation of applying to" any position at UC Santa Cruz.  *Id.* at 7–8.

The Court also rejected Plaintiff's contention that any application would be futile because the facts alleged did not "unambiguously render[] his application futile."  *Id.* at 11 (alteration omitted).  Instead, the FAC described a highly subjective selection process "analogous to the one at issue in *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146 [(9th Cir. 2006)]," in which the Ninth Circuit held that a plaintiff's failure to apply for a school transfer was not futile because it

1  was "uncertain whether the [challenged policy] would have affected the plaintiff."  ECF No. 37 at

2  11 (alteration omitted).

3  **IV.     LEGAL STANDARD**

4          A motion to dismiss under Rule 12(b)(1) challenges the plaintiff's "showing of subject-

5  matter jurisdiction." *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020).

6  "A defendant may either challenge jurisdiction 'facially' by arguing the complaint 'on its face' lacks

7  jurisdiction or 'factually' by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack

8  of jurisdiction on the facts of the case." *Id.* (quoting *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th

9  Cir. 2004) and *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "In a facial

10 attack, the challenger asserts that the allegations contained in a complaint are insufficient on their

11 face to invoke federal jurisdiction," *Safe Air*, 373 F.3d at 1039, and the pleading standard applicable

12 under Rule 12(b)(6) governs, *Wolfe*, 392 F.3d at 362.

13         To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient

14 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *W. Marine

15 Prods., Inc. v. Nat'l Union Fire Ins. of Pittsburgh*, 572 F. Supp. 3d 841, 847 (N.D. Cal. 2021)

16 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In evaluating the complaint, "the court must

17 accept as true all 'well pleaded factual allegations' and determine whether the allegations 'plausibly

18 give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Though courts "must

19 also construe the alleged facts in the light most favorable to the plaintiff," they are "'not bound to

20 accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at

21 678).

22 **V.      ARGUMENT**

23      **A.      All Claims Should Be Dismissed Because Plaintiff Lacks Standing**

24         The Court lacks subject-matter jurisdiction over Plaintiff's claims because Plaintiff does not

25 have Article III standing to bring them.  To survive a facial attack on standing at the motion to

26 dismiss stage, a plaintiff's complaint must plausibly allege "(i) that he suffered an injury in fact that

27 is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

28 defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v.*

*Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Because Plaintiff has not plausibly alleged any legally cognizable injury or the requisite causal relationship, this case does not present the kind of "real controversy with real impact on real persons" that this Court has jurisdiction to resolve.  *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019).

1.     *Plaintiff Has Not Alleged Any Injury in Fact*

Courts may hear only claims based on "injur[ies] in fact"—i.e., "an invasion of a legally protected interest which is" (1) "actual or imminent, not conjectural or hypothetical" and (2) "concrete and particularized."  *Lujan*, 504 U.S. at 560 (cleaned up).  Plaintiff's asserted injury fails on both fronts—either of which would independently warrant dismissal.

(a)     Plaintiff Has Not Alleged an "Imminent" Injury

First, his alleged injury is not "imminent" (much less "actual").  There is no standing when a claim is based on "'some day intentions'" to take an action that could result in an injury "without any description of concrete plans, or indeed even any specification of *when* the some day will be." *Id.* at 563–64 (affidavits stating that plaintiffs would "in the future" visit habitats that would be damaged by the challenged conduct did not demonstrate injury in fact).

Plaintiff's allegations here are based on exactly that sort of "some day intentions."  Most fundamentally, Plaintiff does not allege that there is now or will soon be a position at UC Santa Cruz for which he would be qualified and to which he could and would apply, but-for the DEI contribution statement requirement.  Plaintiff continues to allege that the Psychology Department has, in the past, posted jobs for which he was qualified (though he did not apply), but he does not allege that those positions remain open.  SAC ¶¶ 79, 85.  Even if Plaintiff could be injured without applying for those positions (he cannot, *see infra* pp. 9–12), Plaintiff must still allege "continuing, present adverse effects" of the challenged policy.  *Lujan*, 504 U.S. at 564.

Plaintiff fails to do so.  In *Villa v. Maricopa County*, the Ninth Circuit held that the plaintiff lacked standing because she had failed to adequately allege such continuing effects from an illegal wiretapping scheme—even though *on eight prior occasions* she had been unlawfully wiretapped pursuant to that allegedly unlawful program.  865 F.3d 1224, 1229 (9th Cir. 2017).  Here, Plaintiff

Case No. 5:23-cv-02437-EJD
MOTION TO DISMISS SECOND AMENDED COMPLAINT

does not even allege any cognizable past injury (as he did not apply to two prior open positions). As for future injury, Plaintiff alleges only that "UC Santa Cruz posts similar openings in the psychology department on an annual basis." SAC ¶ 85. But this is precisely "the type of floating 'some day' speculation" that this Court explained could not "support a finding of 'actual or imminent' injury." ECF No. 37 at 7 (quoting *Lujan*, 504 U.S. at 564). Even if this constituted a concrete allegation that there are annual openings in the Psychology Department, the SAC reveals that the Department hires for different subspecialties within psychology and that qualifications will necessarily vary for each position. Plaintiff makes *no* allegation that the Department will hire again in his field of Developmental Psychology. *See* Mot. to Dismiss Hr'g Tr. 36:18-19, ECF No. 43 ("Developmental Psychology . . . is [Plaintiff's] background); SAC ¶¶ 7, 65, 70 & Ex. B. Indeed the Department has not listed an opening for Developmental Psychology since July 2022, *see* SAC ¶ 79, and the fact that the Department just hired a tenure-track professor in Developmental Psychology makes it less—not more—likely that it will hire for this same subspeciality imminently.

(b)     Plaintiff's Alleged Injury Is Insufficiently "Concrete"

The Court's order granting the motion to dismiss the FAC was clear: Plaintiff 's failure to apply was fatal to his claims. None of Plaintiff's new allegations in the SAC alters that conclusion this time around. The SAC does not allege that Plaintiff has *ever* applied for any position at UC Santa Cruz, including a position requiring a DEI contribution statement. *Compare* FAC ¶ 7 *with* SAC ¶ 7. Plaintiff now identifies a *second position*—posted after Defendants filed their motion to dismiss the FAC—to which Plaintiff also refused to apply. As the Court recognized in the order granting the motion to dismiss, "there is a 'long-established rule' that a plaintiff 'lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.'" ECF No. 37 at 5 (quoting *Friery*, 448 F.3d at 1149–50). Because Plaintiff's SAC does not fall within any of the limited exceptions to this general rule, for the same reasons outlined in the order granting the motion to dismiss the FAC, he lacks standing to sue.

***Competitor Standing.*** Plaintiff's invocation of the competitor standing doctrine is inapposite and, in any event, not satisfied. Courts have applied competitor standing only where the challenged policy imposes a disadvantage in the application process sufficiently concrete that it

amounts to a cognizable injury.  In *Planned Parenthood of Greater Washington & North Idaho v. United States Department of Health & Human Services*, 946 F.3d 1100, 1109 (9th Cir. 2020), the Ninth Circuit found a competitive injury because Planned Parenthood's refusal to use a particular risk assessment tool meant it received a zero on "a quarter" of the relevant grantmaking rubric in the defendants' annual competitive bidding process.  And other Ninth Circuit and Supreme Court case law finding competitive injuries all involved racial classifications—not subjective criteria— that provided specific advantages or disadvantages in a competitive process.  *E.g.*, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007); *Bras v. Cal. Pub. Utils. Comm'n*, 59 F.3d 869, 873–74 (9th Cir. 1995).

Plaintiff has not alleged a comparably concrete disadvantage.  Plaintiff alleges only that it is "unlikely" he would receive a mixed or high score on the rubric.  SAC ¶ 95.  But the DEI contribution statement he submitted to another institution discusses the effects of sociocultural factors in human development, his research experience in disparate outcomes across ethnic groups, and how he "values" his experience in outreach to underrepresented groups.  *See* SAC Ex. F.  Had Plaintiff made similar points regarding his awareness, experience, and future plans in an application to UC Santa Cruz, it is far from clear that he would have received a low score.  In any event, Plaintiff makes no allegations about whether or how receiving a low score would affect his odds in UC Santa Cruz's initial screening, as his counsel conceded at the motion to dismiss the FAC hearing.  *See* ECF No. 43 at 32:13 (The University doesn't say that "a one-point score means you won't be considered.").  All Plaintiff alleges in the SAC is that, *for one faculty search, another department, at another university* self-reported that it screened out candidates at high rates based on DEI contribution statements.  SAC ¶ 91.  But he makes no comparable allegation about UC Santa Cruz's Psychology Department and instead expressly alleges that the DEI contribution statement is evaluated alongside a separate research statement.  *See* SAC ¶ 82.  Just as with the FAC, "[t]he competitive injury (if any) . . . is much more abstract and speculative than the allegations in *Planned Parenthood*."  ECF No. 37 at 6.  Thus, the competitor standing doctrine does not apply.

Even if that doctrine could apply, Plaintiff cannot avail himself of it, as he again failed to plausibly allege that he is "able and ready" to apply to a position in the Psychology Department.

1   That is why this Court previously rejected Plaintiff's assertion of competitor standing; the analysis

2   applies with equal force here.  Plaintiff fails to identify any current or future job opening at UC

3   Santa Cruz for which he would be qualified and for which a DEI contribution statement would be

4   required.  *See supra* pp. 8–9. And Plaintiff concedes he has not applied to either of the positions he

5   alleges was once open and for which he claims he was qualified.  *See* SAC ¶¶ 79, 85.

6          The new details concerning Plaintiff's still unsuccessful job search do not dictate a different

7   result.  He alleges that he has applied to at least ten other schools, including some in California.

8   SAC ¶ 64.  And he attaches those application materials to the SAC.  Most notably, he alleges that

9   he has in fact *written* a DEI contribution statement that he *submitted* to another institution.  Yet

10  Plaintiff offers no explanation for why he refused to submit that statement to apply to the positions

11  at UC Santa Cruz.  As in *Carney v. Adams*, where the Supreme Court held that the plaintiff's late-

12  breaking change in partisan registration undermined his readiness and ability and instead suggested

13  litigation strategy, *see* 592 U.S. 53, 63–64 (2020), Plaintiff's willingness to apply to positions with

14  the *same allegedly discriminatory requirement* belies his "ability and readiness" to apply to UC

15  Santa Cruz.

16         **Futility.**  As in the FAC, Plaintiff fails to plausibly allege that it would have been futile for

17  him to apply to Psychology Department positions.  As this Court explained, futility is a narrow

18  exception that applies only where the challenged policy "unambiguously" precludes the plaintiff

19  from acquiring the benefit they seek.  ECF No. 37 at 11 (quoting *Pizzo v. City & Cnty. of S.F.*, 2012

20  WL 6044837, at *15 (N.D. Cal. Dec. 5, 2012)).  This Court rightfully noted that the Ninth Circuit's

21  decision in *Friery v. Los Angeles Unified School District* is dispositive here.  The plaintiff in *Friery*

22  had challenged a school district policy that limited the ability of teachers to transfer between schools

23  in order to preserve a certain "ratio of white faculty to nonwhite faculty."  448 F.3d at 1147–48.

24  Though such transfers were discouraged, they could still be approved "on the basis of dire need,

25  excellent qualifications, or any other reason."  *Id.* at 1149.  The Ninth Circuit explained that this

26  policy left sufficient room for the plaintiff's transfer to be approved.  As such, his application would

27  not have been futile, and therefore he was required to apply for a transfer before challenging the

28  policy to ensure that the policy "would have affected [him]."  *Id.*

1     The Ninth Circuit's decision in *Friery* is dispositive of Plaintiff's claims.  Plaintiff has not

2  plausibly alleged in the SAC that his DEI contribution statement, had he applied and submitted one,

3  would in fact receive a low score.  Nor has he alleged that there is a scoring cutoff below which he

4  is "unambiguously" precluded from being hired.  Nor has he alleged that individuals with low scores

5  on DEI contribution statements but outstanding research statements are nevertheless excluded from

6  consideration past UC Santa Cruz's initial screening.  As in *Friery*, Plaintiff's cry of futility

7  "assumes too much" and represents "the quintessence of conjecture and speculation" because it is

8  "uncertain whether [the challenged policy] would have affected" him.  *Id.* at 1149–50.  Moreover,

9  Plaintiff has now demonstrated that he could have written a statement describing his mentorship of

10  students from underrepresented minority groups, experience with and sensitivity to adolescents from

11  a variety of ethnic and sociocultural backgrounds, and commitment to diverse viewpoints.  *See* SAC

12  Ex. F.  It is uncertain *whether* such a statement would have received a low score, and even if so,

13  *how* a low score would have affected his application *if* he submitted one.

14     **Prudential Standing.**  The fact that Plaintiff brings claims under the First Amendment is

15  irrelevant to whether he is entitled to prudential standing, and the line of cases he cites is

16  inapplicable.  As the Court explained in its order dismissing the FAC, that doctrine applies only in

17  the limited class of pre-enforcement First Amendment cases where the plaintiff faces serious

18  penalties as a consequence of failing to comply with a public speech licensing regime.  ECF No. 37

19  at 9–10.  Plaintiff's allegations here are insufficient to invoke prudential standing; he will not be

20  prosecuted or fined as a consequence of what he writes in his DEI contribution statement, and at

21  most, he will remain status quo—i.e., not employed by the University.

22          2.    *Plaintiff Has Not Alleged an Injury Caused by the DEI Contribution*

23                *Statement Requirement*

24     The third independent basis to dismiss for lack of standing is that Plaintiff has not adequately

25  alleged he suffered any injury "fairly traceable" to UC Santa Cruz's DEI contribution statement

26  requirement.  *See Lujan*, 504 U.S. at 560 (alteration and citation omitted).  To satisfy the causation

27  element of Article III standing, "[t]he line of causation between the defendant's action and the

28  plaintiff's harm must be more than attenuated."  *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696

F.3d 849, 867 (9th Cir. 2012) (Pro, J., concurring) (internal quotation marks omitted).  Where some factor other than the challenged conduct breaks the causal chain between the defendant's challenged conduct and the plaintiff's claimed injury, "the causal chain is too weak to support standing."  *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013); *accord Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 694–95 (7th Cir. 2015).

Plaintiff has not alleged any cognizable injury, nor has he pleaded facts necessary to draw a line of causation between UC Santa Cruz's DEI contribution statement requirement and his purported injury.  He has not alleged that he would apply and be qualified for an *open* teaching position in the Psychology Department, or that there would be a *future* position for which he is qualified and to which he would apply.  Plaintiff therefore cannot plausibly allege that UC Santa Cruz's application requirement is standing between him and a Psychology Department job.

Plaintiff alleges no more than his "expect[ation] [that] the University [will] continue posting job opportunities."  SAC ¶ 88.  This is a conclusory allegation and therefore insufficient to establish standing.  *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013) ("[C]onclusory and bare bones words and phrases without any factual content" are "insufficient to establish standing or to survive a motion to dismiss.").  Plaintiff's barebones "expectation" is also contradicted by the SAC:  UC Santa Cruz has already filled its July 2022 posting for a tenure-track position in Plaintiff's field of Developmental Psychology, (*see* Mot. to Dismiss Hr'g Tr. at 36:18–19; SAC ¶¶ 7, 65, 70, 79 & Ex. B), and did not post another position in 2023—contrary to Plaintiff's conclusory statement that "UC Santa Cruz posts similar openings in the psychology department on an annual basis" (SAC ¶ 85).  The Quantitative Psychology position UC Santa Cruz posted in September 2023 is not comparable, in that the job posting attached to the SAC makes clear that Plaintiff is not qualified for the position.  *See id.* Ex. H (position required "*expertise* in quantitative methods and demonstrated excellence in teaching statistics at the *graduate* and undergraduate levels" (emphasis added)).

Nor do Plaintiff's allegations about his job search, or the application materials he claims he could have submitted, establish the necessary causal link between the UC Santa Cruz application requirement and his purported harm.  Plaintiff does not even allege he would have submitted the

1   attached DEI contribution statement, used to apply to another institution, to UC Santa Cruz.  *See*

2   SAC ¶ 84.  He has not identified a specific position for which UC Santa Cruz may be hiring, for

3   which he is qualified, and in which he is interested in applying.  Thus, he cannot establish that  UC

4   Santa Cruz's DEI contribution statement requirement—as opposed to his lack of other qualifications

5   or intent to apply—would be the cause of some future potential harm.  Plaintiff therefore has failed

6   to satisfy his burden to establish standing.  *Cf. Carroll v. Nakatani*, 342 F.3d 934, 942 (9th Cir.

7   2003) (holding that party lacked standing where party filed only a "symbolic, incomplete

8   application" and did not demonstrate an "ability to compete" for benefit); *Bradley v. T-Mobile US,*

9   *Inc.*, 2020 WL 1233924, at *10 (N.D. Cal. Mar. 13, 2020) (to establish standing, plaintiffs had to

10   "plausibly allege that they were 'able and ready' to apply" for jobs, with "'able' mean[ing]

11   qualified" and 'ready' mean[ing] seeking employment and genuinely interested in the position").

12   As with the lack of imminence and the lack of concreteness, the failure to allege an injury "fairly

13   traceable" to UC Santa Cruz's requirement that faculty applicants submit a DEI contribution

14   statement is a separate and independent basis to dismiss the SAC.

15        **B.      Plaintiff Fails to State a First Amendment Viewpoint Discrimination Claim**

16        Plaintiff's lack of standing means this Court again need not reach the merits of his

17   viewpoint discrimination claim—yet that claim does fail on the merits.  To state such a claim

18   against a government employer, an employee or applicant must plausibly allege "(1) that he or she

19   engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that

20   his or her speech was a 'substantial or motivating factor' for the adverse employment action."

21   *Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Coszalter v. City of*

22   *Salem*, 320 F.3d 968, 973 (9th Cir. 2003)); *see also Oyama v. Univ. of Haw.*, 813 F.3d 850, 866

23   n.12 (9th Cir. 2015) (collecting cases applying this test to job applicants).  Plaintiff fails all three

24   parts of this test.[1]

25

26   _____

[1] The Ninth Circuit has sometimes described this as a five-part test, in which the first three elements

27   encompass the three elements quoted above and the last two elements encompass an affirmative

28

1          1.      *The DEI Contribution Statement Requirement Does Not Implicate Protected*
2                   *Speech.*

3          Plaintiff's viewpoint discrimination claim fails at the outset because he has not identified

4  any speech that would be "protected" private speech for First Amendment purposes.   Public

5  employees generally do not enjoy First Amendment protection for speech made "pursuant to their

6  official duties." *Garcetti*, 547 U.S. at 421.  Job applicants similarly do not enjoy First Amendment

7  protection for statements used by employers to evaluate their ability to carry out official duties.

8  *Wetherbe*, 593 F. App'x at 329 (extending rule regarding lack of First Amendment protections for

9  public employees to applicants for public employment); *Worrell v. Henry*, 219 F.3d 1197, 1207

10 (10th Cir. 2000) (same); *Bonds v. Milwaukee Cnty.*, 207 F.3d 969, 979 (7th Cir. 2000) (same);

11 *Hubbard v. EPA*, 949 F.2d 453, 460 (D.C. Cir. 1991) (same).

12         The Supreme Court has long recognized that the government must, in certain circumstances,

13 make content- and viewpoint-based choices, and when it comes to "competing applicants, . . .

14 absolute neutrality is simply 'inconceivable.'"  *See Nat'l Endowment for Arts v. Finley*, 524 U.S.

15 569, 585 (1998).  That is particularly true as to universities:  Because "academic freedom" of

16 *universities* (public and private) has long been "a special concern of the First Amendment,"

17 universities will nearly always cultivate and maintain their own institutional viewpoints as exercises

18 of that essential freedom.  *Regents of Univ. of Mich.*, 474 U.S. at 226.  Like other government

19 entities, when a public university "embarks on a course of action, it necessarily takes a particular

20 viewpoint and rejects others."  *Matal*, 582 U.S. at 234.  Because "imposing a requirement of

21 viewpoint-neutrality on government speech would be paralyzing," the "Free Speech Clause does

22 not require government to maintain viewpoint neutrality when its officers and employees speak

23

24 defense that would be triggered if the plaintiff can satisfy the first three elements.  *See Oyama*, 813

25 F.3d at 865 (describing framework); *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (describing

26 specific test for "teaching and academic writing").  Because Plaintiff cannot establish any of the

27 first three elements, the Court need not evaluate the last two elements here.

28

1    about that venture." *Id.*   Forcing viewpoint neutrality on public universities, therefore, would

2    preclude universities, as institutions, from meaningfully engaging in the kind of academic

3    exploration, discovery, and societal impact that form the core of academic freedom.

4        The Supreme Court has therefore acknowledged that public entities "need a significant

5    degree of control over their employees' words and actions" in carrying out their functions. *Garcetti*,

6    547 U.S. at 418–19.   That is why the Supreme Court held in *Garcetti* that "when public employees

7    make statements pursuant to their official duties, the employees are not speaking as citizens for First

8    Amendment purposes, and the Constitution does not insulate their communications from employer

9    discipline." *Id.* at 418–19, 421.   As discussed below, this also applies to applicants.

10                    (a)    The DEI Contribution Statement Is Not Protected Speech Under
11                            *Garcetti*

12       Under *Garcetti*, when "public employees make statements pursuant to their official duties,"

13   public employers may restrict or evaluate such speech without running afoul of the First

14   Amendment. *Id.* at 421.   That principle necessarily extends to speech by *prospective* government

15   employees in the hiring context, where "the speech plainly owes its existence to the government,"

16   and the applicant's "opinion on issues that are central to the operation and mission of the institution

17   . . . will allow [the hiring committee] to gauge whether the applicant will be an effective employee."

18   *Wetherbe*, 593 F. App'x at 329; *see also Oyama*, 813 F.3d at 866 n.12 (collecting cases).   As the

19   Fifth Circuit explained in the context of a faculty candidate who was not hired due to statements

20   made in his interview, "[n]othing in First Amendment jurisprudence suggests that a government

21   employer is so restricted relative to a private employer that the government cannot screen applicants

22   to ensure that they actually will perform their duties with maximal diligence." *Wetherbe*, 593 F.3d

23   at 329; *accord Worrell*, 219 F.3d at 1207; *Bonds*, 207 F.3d at 979; *Hubbard*, 949 F.2d at 460.

24       Applying *Garcetti* to speech by job applicants related to job functions is consistent with

25   broader First Amendment principles.   The Supreme Court has recognized that government may, and

26   indeed often must, evaluate speech made related to the criteria used to award a government benefit—

27   such as a grant, an appearance on public television, or the inclusion of a book in a public library—

28   as part of a competitive selection process and that such evaluation therefore does not amount to

impermissible viewpoint- or content-based discrimination.  *See, e.g.*, *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 204 (2003); *Nat'l Endowment for Arts*, 524 U.S. at 586; *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 672–73 (1998).  And courts across the country, including the Ninth Circuit, have applied this reasoning to permit content and viewpoint evaluation in the many competitive selection and certification processes that public universities constantly facilitate.  *See, e.g.*, *Oyama*, 813 F.3d at 868 (holding that the university could refuse to admit a prospective student teacher into a certification program due to speech that was inconsistent with "established professional standards"); *Buxton v. Kurtinitis*, 862 F.3d 423, 430 (4th Cir. 2017) (rejecting a First Amendment claim related to a denial of admission to a public university due to interview statements because "any competitive interview process . . . requires distinctions to be made based on the speech—including the content and viewpoint—of the interviewee"); *Keeton v. Anderson-Wiley*, 664 F.3d 865, 867 (11th Cir. 2011) (holding that requiring a graduate student to complete a remediation plan in order to participate in the public university's clinical counseling practicum because of perceived "deficiencies in her ability to be a multiculturally competent counselor, particularly with regard to working with gay, lesbian, bisexual, transgender, and queer/questioning (GLBTQ) populations," did not violate the student's Free Speech rights (internal quotation marks omitted)).  Thus, without implicating the First Amendment, UC Santa Cruz may evaluate—and make hiring decisions on the basis of—speech made by job applicants concerning their ability to perform the official duties of the position to which they have applied.

The SAC is unchanged in alleging that the DEI contribution statement requirement is plainly part of the University's efforts to evaluate applicants' ability to perform their "official duties" as a UC Santa Cruz faculty member, if hired.  To determine the scope of an employee's "official duties," the "proper inquiry is a practical one" that looks to the "duties an employee actually is expected to perform."  *Garcetti*, 547 U.S. at 423–25.  Plaintiff concedes that UC Santa Cruz and the Psychology Department "actually . . . expect" its faculty to engage in DEI-related activities.  SAC ¶ 13 (alleging that UC has evaluated faculty members for tenure and promotion based on their efforts to promote "diversity and equal opportunity" for nearly 20 years).  Plaintiff's allegation that these activities have "nothing to do with the University's mission, the qualifications for any given tenure-track

position, or professional standards for academics," *id.* ¶ 54, are directly contradicted by his concessions that a university may ask faculty applicants about their "contributions to diversity" and "whether they would be able to get along in the diverse UC Santa Cruz environment." ECF No. 43 at 33:10, 34:4–5. His bare allegation is also unsupported by any factual allegations and is therefore too conclusory to be credited. *Perez*, 711 F.3d at 1113 (refusing to credit "bare bones words and phrases without any factual content"). And it is irrelevant in any event. Under *Garcetti*, what matters is the job duties the government employer expects the employee to perform, not whether the prospective employee likes those expectations. *See Garcetti*, 547 U.S. at 425.

Plaintiff's allegation that the information in DEI contribution statements is not relevant to the University's mission is also inherently implausible. The Supreme Court recognized recently that students' race, gender, and other characteristics that may make them underrepresented on university campuses may (though do not always) shape other aspects of their life experience. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2175 (2023). The Court explained that a student may demonstrate unusual "courage and determination" by "overcom[ing] racial discrimination" or a student's "heritage or culture" may "motivate[] him or her to assume a leadership role or attain a particular goal." *Id.* UC Santa Cruz therefore has a strong interest in hiring faculty who will be aware of and sensitive to how a wide range of personal experiences might inform a student's "unique ability to contribute" to their field. *See id.* It defies logic for Plaintiff to deny that UC Santa Cruz best serves all of its students by hiring faculty who are capable of recognizing the role that such experiences may sometimes play in students' lives. After all, the DEI contribution statement Plaintiff submitted to another institution touts his experience working with adolescents from various ethnic and sociocultural backgrounds for instilling in him a "deep appreciation of the importance of a sensitivity to the social and cultural factors that shape human development." SAC Ex. F.

Because *Garcetti* applies and, under *Garcetti*, there is no First Amendment-protected speech at issue here, Plaintiff's viewpoint discrimination claim should be dismissed.

1

2

       (b)       Plaintiff Cannot Avoid *Garcetti* by Claiming the DEI Contribution Statement Requirement Relates to Scholarship or Teaching

3           For the reasons stated in Defendants' Reply in Support of the Motion to Dismiss the FAC,

4   any attempt by Plaintiff to argue that *Garcetti* does not apply because his claim implicates his own

5   academic freedom interests will fail.  *See* ECF No. 33 at 11–13.  In *Demers*, the Ninth Circuit held

6   that *Garcetti* does not apply to a professor's speech related to "teaching and academic writing" and

7   that such speech therefore received First Amendment protection. 746 F.3d at 412.  But *Demers* does

8   not apply.  The Ninth Circuit has expressly held that university *service* activities—such as sitting

9   on committees that inspect and ensure the legality of certain research activities—do not relate to

10   "teaching and academic writing" and are therefore governed by the *Garcetti* test.  *See Sullivan v.*

11   *Univ. of Wash.*, 60 F.4th 574, 582 n.6 (9th Cir. 2023).  Applying the same standard, the Fourth

12   Circuit held that a professor's emails criticizing hiring searches and statements in faculty meetings

13   disapproving of DEI initiatives did not "relate[] to scholarship or teaching" and so were governed

14   by *Garcetti*.  *Porter v. Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 582 (4th Cir. 2023) (citation

15   omitted), *cert. denied*, 2024 WL 218781 (U.S. Jan 22, 2024).  Because the DEI contribution

16   statement requirement is part of a job application process,  it is even more attenuated from teaching

17   and academic writing than speech in a faculty meeting related to student teaching evaluations.

18          As Plaintiff alleges in the SAC, the submission of a DEI contribution statement as part of

19   the hiring process is the same sort of non-scholarly activity that was at issue in *Sullivan* and

20   *Porter*.  It is therefore not within the narrow category of "speech relating to scholarship or

21   teaching" that falls outside *Garcetti*'s reach.  Indeed, as noted above, Plaintiff himself alleges that

22   DEI contribution statements "have nothing to do with the University's mission, the qualifications

23   for any given tenure-track position, or professional standards for academics."  SAC ¶ 54.  Plaintiff

24   similarly alleges that faculty activities to promote "diversity and equal opportunity," which could

25   and often do take place outside the classroom, are distinct from "more traditional measures of

26   aptitude, including academic success, publications, research plans, and teaching ability."  *Id.*

27   ¶¶ 13–14.  The University, of course, disagrees that DEI contribution statements lack any

28   relevance to the University's mission or faculty's qualifications; to the contrary, such statements

1    serve the mission of hiring faculty who will be able to provide an excellent and equitable

2    education to the University's diverse student body.  But Plaintiff's allegations must be taken as

3    true on a motion to dismiss.  Doing so here, Plaintiff's own allegations demonstrate that the DEI

4    contribution statement requirement does not restrict or otherwise evaluate speech "relating to

5    scholarship or teaching"—and, in fact, claim the opposite.  Accordingly, the *Garcetti* standard

6    applies to—and bars—Plaintiff's claim.

7                    2.      *Plaintiff Has Not Alleged Any Adverse Employment Action*

8            Plaintiff's claim is missing an essential ingredient:  any past, current, or future potential

9    employment relationship between him and Defendants.  Defendants cannot have taken any

10   adverse employment action against him because he has not alleged that he applied for or was

11   denied any job, or even that there was or will soon be any job in his field of Developmental

12   Psychology from which the requirement to submit a DEI contribution statement deterred him from

13   applying.  *See supra* pp. 8–12 (no cognizable injury for similar reasons).  Plaintiff cannot fall back

14   on his futility argument, which the Court rejected, to avoid this defect.  *See* ECF No. 37 at 11.

15           Even if Plaintiff were to apply to the University at some point in the future, his allegation

16   that his prior DEI contribution statement (which he does not allege he would submit to UC Santa

17   Cruz, *see* SAC ¶ 84) would be unlikely to receive a mixed or high score also is not sufficient to

18   plead an adverse employment action.  The Ninth Circuit's approach to performance evaluations—

19   which, like individual components of a job application can, but do not always, lead to employment

20   decisions—shows what the law would be in this hypothetical scenario.  The Ninth Circuit has held

21   that, even under the more relaxed standard for retaliation claims, "mediocre" evaluations are

22   adverse employment actions only if they "give rise to . . . further negative employment action[]."

23   *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) (describing *Kortan v. Cal. Youth Auth.*,

24   217 F.3d 1104, 1112–13 (9th Cir. 2000)); *see also Coszalter*, 320 F.3d at 976 (same standard for

25   adverse action applies for retaliation claims under both Title VII and the First Amendment).

26           Plaintiff's allegations related to the DEI contribution statement he submitted to another

27   institution do not give rise to a plausible inference of an adverse employment action.  For all

28   anyone knows, his statement could well have received a mixed or high score.  *See supra* p. 12.

Regardless, Plaintiff does not allege that a low score on the DEI contribution statement is or has ever been disqualifying for any job candidate in the UC Santa Cruz Psychology Department.  (His allegation regarding a self-survey at UC Berkeley is inapposite.)  Nor does he allege that a high score guarantees advancement beyond the initial screening.  Further, while he alleges that the DEI contribution statement is considered alongside a research statement for initial screening purposes and attaches a research statement he claims he could submit, SAC ¶ 82 & Ex. B, he does not and cannot make any allegation about how that research statement would be evaluated in the initial screening round for an unposted job.  There is no basis plausibly to conclude that Plaintiff's hypothetical score on his never-submitted DEI contribution statement—whether high, mixed, or low—would result in a negative decision as to any future job application.  It therefore has not "matured into an adverse employment decision." *Lyons*, 307 F.3d at 1118.  Plaintiff's First Amendment claim fails for this reason as well.

3.   *Plaintiff Has Failed to Plausibly Allege that Any Viewpoint of His Was a "Substantial or Motivating Factor" for Any Adverse Employment Action.*

Finally, there are three reasons why Plaintiff fails to plausibly allege that his views would be the "substantial or motivating factor" for any action by Defendants:  (1) he cannot allege that his views, rather than other deficiencies in his application, would be responsible for his failure to advance beyond the initial screening or to be hired; (2) he does not specifically allege what views the University requires or which of his views would be disqualifying under the rubric; and (3) the University evaluates statements for competence, not personal viewpoints.

*First*, as already explained, Plaintiff has failed to plausibly allege that he was qualified for any past or future position at UC Santa Cruz, that but for his views he would pass an initial screening based on a DEI contribution statement and research statement, and that he satisfies the other application requirements for any past or future position. *See supra* pp. 12–14.  Plaintiff therefore has failed to allege that any views he would espouse in his DEI contribution statement—and not his lack of qualifications with respect to other aspects of any open position—would be a "substantial or motivating factor" in an employment action.

*Second*, Plaintiff has not alleged with sufficient particularity what viewpoints in a DEI contribution statement would be a substantial or motivating factor in his being rejected at the initial screening stage.  Plaintiff alleges that the University uses a rubric to evaluate statements based on the candidate's: "awareness, experience, and future plans."  SAC ¶ 39.  The SAC does not allege the substance of the "awareness" requirement, or why or how it might constitute viewpoint discrimination.  *See id.* ¶ 40 ("Ideas and beliefs that applicants are supposed to convey are . . . particularly captured under the 'awareness' heading.").   Similarly, Plaintiff alleges that the "[e]xperience" and "future plans" requirements are "thinly veiled proxies for particular beliefs that the administration favors," without alleging what those beliefs are.  *Id.* ¶ 41.  Plaintiff offers only sparse and vague allegations about the rubric and thus about the ideological beliefs that he claims he would be forced to espouse if a position opened and he applied for it.  *See, e.g.*, *id.* ¶ 38.  For example, he alleges that UC Santa Cruz defines the terms "diversity," "equity," and "inclusion" "in a specific manner that ensures successful applicants adhere to a particular ideology and worldview," but he does not further elaborate on what that alleged ideology or worldview is.  *Id.*

The closest Plaintiff comes to alleging specific criteria in the rubric are his allegations that the University would score DEI contribution statements higher if they believe "treating individuals differently based on their race or sex is desirable" and lower if they "believe race and sex should not be used to judge individuals."  *Id.* ¶¶ 43–46.  But this is still far too vague to adequately plead viewpoint discrimination.  There are numerous ways that a university might treat people differently according to sex and race to which Plaintiff may well not object, including sex-segregated bathrooms, housing students in rooms with roommates of the same sex, offering men's and women's athletics teams, or even using race to recommend particular medical care for students of different races based on genetic or epidemiological factors.

Without specific allegations as to the viewpoints allegedly mandated by the rubric, Plaintiff cannot sufficiently allege which of his viewpoints would be disqualifying in the initial screening for any hypothetical open position.  He alleges, based on his past DEI contribution statement, that he is "committed to colorblind inclusivity, viewpoint diversity, merit-based evaluation, and value[s] outreach to underrepresented groups in higher education"  *Id.* ¶ 76.  He does not and cannot allege

1    that these viewpoints would produce disqualifying scores under the rubric for awareness,

2    experience, or future plans.   Indeed, as the Supreme Court explained in *Students for Fair*

3    *Admissions*, a policy can be both "colorblind[]" and credit individuals' varying accounts of how

4    race has shaped their lives (which may be different for students of different races) in evaluating their

5    "unique ability to contribute to the university"—i.e., individual merit.   143 S. Ct. at 2174, 2176.

6          *Third*, even to the extent that Plaintiff has alleged what views are "preferred," his allegations

7    establish only that UC Santa Cruz evaluates applicants based on professional competence with

8    respect to DEI—not personal viewpoint.   For both "experience" and "future plans," Plaintiff alleges

9    that applicants are "evaluated based on an applicant's past or planned contributions to diversity,

10   equity, and inclusion in teaching, research and professional work, and service and professional

11   activities."   SAC ¶ 41.   That is not equivalent to asking a faculty member's personal views on DEI-

12   related issues, no matter how many times Plaintiff tries to characterize the DEI contribution

13   statement as an ideological litmus test.   *Cf.* Brian Soucek, *Diversity Statements*, 55 U.C. Davis L.

14   Rev. 1989, 2019 (2022) (in diversity statements, "faculty are being asked to share their

15   accomplishments, not their own view of whether those accomplishments were worthwhile, a good

16   use of their time, or something they would do if it weren't financially rewarded by their employer").

17   Employees are often called upon to carry out employer programs with which they disagree.   The

18   DEI contribution statement evaluates an applicant's achievements with respect to "promoting equal

19   opportunity and diversity," SAC ¶ 13, which is not the same as the applicant's viewpoint on those

20   topics.   By analogy, a public university health clinic does not engage in "viewpoint discrimination"

21   by asking nursing applicants about their experience and ability to administer mandatory vaccines or

22   even their awareness of peer-reviewed studies demonstrating vaccines' efficacy and side effects.   It

23   instead simply asks the applicant about job-relevant knowledge and their experience and ability to

24   perform expected job functions.

25          Speech in an academic employment context does not dictate a different result,

26   notwithstanding principles of academic freedom.   University faculty are often asked to implement

27   administrative policies that may conflict with their research or personal perspectives.   For example,

28   psychology professors may have varying academic views about the appropriateness of

accommodations for students with certain kinds of disabilities, such as extra time on exams or in-class notetaking support.  But all professors are required to comply with the University's disability accommodations policies and the University's view of what the law requires to provide those students equal access to education.  *See, e.g.*, 42 U.S.C. § 12132.  Similarly, psychology professors might conduct research on a Freudian view of sexual orientation, believing same-sex attraction to be a pathological response to childhood trauma.  But they must still treat LGBTQ students with respect and dignity and without bias or discrimination.  *See, e.g.*, 20 U.S.C. § 1681(a).  In other words, while professors have broad academic freedom rights to research and possess controversial views, they also have myriad other job duties that may sometimes conflict with their academic views.  The DEI contribution statement requirement is no different:  it focuses on how faculty will perform job duties related to creating an environment that is inclusive of UC's entire diverse student body, regardless of their personal views on diversity initiatives or "DEI" more broadly.

* * *

In short, Plaintiff has failed to allege any of the three elements of a viewpoint discrimination claim:  he has not alleged protected speech under *Garcetti*; he has not alleged that he has faced or will face an adverse employment action; and he has not alleged that his viewpoint has motivated or will at some point in the future motivate any such adverse action.

**C.    Plaintiff Fails to State a Claim for Unconstitutionally Compelled Speech**

Plaintiff's second claim for compelled speech fails at the outset for the same reasons as his viewpoint discrimination claim.  Plaintiff alleges that the same policy and underlying facts give rise to both his compelled speech and viewpoint discrimination claims.  The Supreme Court has rejected arguments that there is any "constitutional significance" to the difference between government action that compels, rather than restricts, speech.  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988).  The compelled speech claim fails for this reason alone.

In addition, Plaintiff has failed to allege any compelled speech, for a number of reasons.  *First*, as a threshold matter, because Plaintiff has not yet applied for any position at UC Santa Cruz (and may never apply for such a position), he has not been and may never be compelled to speak.

*Second*, neither the University nor the Psychology Department dictates what DEI contribution statements must say or must not say.  *Cf. Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("The First Amendment means that a state cannot tell anyone what to read or write, but a state university may demand that students read things they prefer not to read and write things they prefer not to write.").  Plaintiff attaches a DEI contribution statement he submitted to a different university and does not allege that he would be compelled to add any particular additional message (or remove any message) before submitting that statement to UC Santa Cruz.

*Third*, as discussed above, the compelled speech doctrine does not bar the University from conditioning a grant of employment on its evaluation of the statement that the applicant ultimately elects to make relating to how they will carry out their official duties.  *See Wetherbe*, 593 F. App'x at 329; *see also supra* pp. 16–18.  That is so even if that evaluation does involve some incidental compulsion of speech, as might be the case with written assignments.  *See Keeton*, 664 F.3d at 867 (holding that the First Amendment permitted a university to require a graduate student who wished to counsel patients through the university's practicum to undertake remedial courses related to counseling LGBTQ patients—courses that would necessarily compel some amount of speech from the student—despite her conflicting personal views).  Even Plaintiff conceded in the last round of motion to dismiss briefing that a condition on employment is unconstitutional only where it is "by [its] nature" not "within the scope of the [] program" conferring the benefit.  Opp'n to Mot. to Dismiss FAC at 22, ECF No. 29.  Here, for the reasons already explained, the DEI contribution statement is relevant to hiring decisions.  Thus, for these separate and independent reasons, Plaintiff has failed to state a claim of unconstitutionally compelled speech.

## VI.   **CONCLUSION**

For the foregoing reasons, this Court should dismiss the SAC with prejudice.  Plaintiff has now had three attempts to plead.  It is clear that no possible further amendment could cure the defects in the SAC, including the fundamental problems that Plaintiff has not applied for a position at UC Santa Cruz or identified an open position for which he would be qualified and would want to apply.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (upholding denial of leave to amend when amendment would be futile).

1    DATED:  March 1, 2024                    MUNGER, TOLLES & OLSON LLP

2                                             By:        /s/ Bryan H. Heckenlively

3                                                   BRYAN H. HECKENLIVELY
                                              Attorneys for Defendants
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28