UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN D. HALTIGAN,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL V. DRAKE, et al.,<br><br>Defendants. | Case No. 5:23-cv-02437-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 44 |

Plaintiff, John D. Haltigan ("Plaintiff"), brings claims against university officers at the University of California (the "University") and the University of California, Santa Cruz ("UC Santa Cruz") (collectively, "Defendants") alleging that UC Santa Cruz's requirement for faculty candidates to submit a statement on their contributions to diversity, equity, and inclusion ("DEI"), along with UC Santa Cruz's guidance and rubric analyzing such statements, violates the First Amendment principles of academic freedom. *See* Second Am. Compl. ("SAC"), ECF No. 38.

Before the Court is Defendants' second motion to dismiss. ECF No. 44. This motion is fully briefed. Opp'n, ECF No. 45; Reply, ECF No. 46. For the reasons stated below, the Court **GRANTS** Defendants' motion to dismiss.

I. **BACKGROUND**

The Court previously summarized Plaintiff's factual allegations in its January 12, 2024, Order Granting Defendants' Motion to Dismiss ("Prior Order"), ECF No. 37. These allegations remain largely unchanged. The Court will therefore only discuss the allegations relevant to the Court's present analysis.

Plaintiff, an undergraduate statistics professor at the University of Miami with a PhD in

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS

1

1    Developmental Psychology, has been engaged in a nationwide search for a tenure track position
2    at a university since early 2023.  *Id.* ¶¶ 7, 58, 59, 86.  Plaintiff directs his job search to places he
3    wishes to live and work, and openings that fit his background and interests.  *Id.* ¶ 60.  Plaintiff
4    wants to live and work in California, his background is in Developmental Psychology, and his
5    interests include the legacy of early caregiving experiences on child and adolescent environment,
6    life history, measurement and classification of child and adolescent psychopathology, and
7    longitudinal data modeling.  *Id.* ¶¶ 3, 7, 68, 70.  Plaintiff applied to more than ten academic jobs
8    in 2023, including multiple openings in California.  *Id.* ¶ 64.

9    On July 21, 2022, UC Santa Cruz announced an open tenure-track position in
10   Developmental Psychology ("the 2022 Developmental Psychology position") requiring a cover
11   letter, CV, research statement, statement on contributions to DEI, teaching statement, and
12   significant article reprint or preprints.  *Id.* ¶ 79, Ex. G.  Initial screening for the position is based
13   only on the research statement and DEI statement.  *Id.*, Ex. G.  The DEI statement must address
14   the applicant's "understanding of the barriers facing traditionally underrepresented groups and
15   your past and/or future contributions to DEI through teaching and professional or public service."
16   *Id.*, Ex. G.  The position description encourages candidates to review UC Santa Cruz's guidelines
17   on these statements, including its definition of the terms "diversity," "equity," and "inclusion."
18   *Id.* ¶¶ 37−41.  The webpage defining DEI, which is linked to the position description, contains
19   another link to a rubric UC Santa Cruz uses to assess a candidate's contributions to DEI.  *Id.* ¶ 42
20   n.1.  The rubric assigns points according to a candidate's knowledge, experience, and plans to
21   advance DEI at UC Santa Cruz.  *Id.*  Additional materials on DEI are found through sources such
22   as UC Santa Cruz's Psychology Department or Academic Personnel Office "DEI Resources"
23   webpages.  *Id.* ¶¶ 50−54.  Plaintiff alleges that every academic job opening at UC Santa Cruz
24   requires the same material, including a statement on contributions to DEI, and follows the same
25   initial screening process.  *Id.* ¶ 81.

26   Plaintiff "first learned about a position at UC Santa Cruz which fit his background and
27   interests in early 2023."  *Id.* ¶ 58.  Though Plaintiff does not allege as much, the Court presumes

28   Case No.: 5:23-cv-02437-EJD
     ORDER GRANTING MOTION TO DISMISS
                                           2

that "a position" refers to the 2022 Developmental Psychology position.  Because Plaintiff was applying to academic positions at other schools, at the time he initiated this action in May 2023, he had all the materials required for the 2022 Developmental Psychology position, with only minor modifications needed to his cover letter.  *Id.* ¶¶ 58–73.

However, he did not apply to UC Santa Cruz for the position.  Plaintiff expresses his belief that his application would have ended up discarded without consideration of his qualifications because his views on DEI differ from the views represented in the University's materials.  *Id.* ¶ 93.  In support for his supposition, Plaintiff cites to a self-reported study showing that 76% of applicants to UC Berkeley, UC Santa Cruz's sister school that uses the same rubric, were eliminated based on their diversity statements alone.  *Id.* ¶ 91.  Plaintiff "expects the University to continue posting job opportunities that he is interested in going forward" because UC Santa Cruz posts similar openings in the psychology department on an annual basis, as illustrated by a September 2023 posting for a Quantitative Psychology position.  *Id.* ¶¶ 85, 88.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder." *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction").  To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion.  Fed. R. Civ. P. 12(b)(1).  In reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, unless the defendant brings a factual attack, courts accept the facts alleged in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Wolfe*

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
3

1  *v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

2  **III.   DISCUSSION**

The Court dismissed Plaintiff's First Amended Complaint ("FAC") for lack of Article III jurisdiction pursuant to Rule 12(b)(1), finding that Plaintiff failed to allege an injury-in-fact that is "concrete and particularized" and "actual or imminent." *See* Prior Order.  For the reasons stated below, the Court finds that Plaintiff has failed to cure these deficiencies in his SAC.

**A.   Concrete and Particularized**

A concrete and particularized injury-in-fact is a "real, and not abstract" injury that "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016), *as revised* (May 24, 2016) (internal quotation marks omitted).  Accordingly, there is a "long-established rule" that a plaintiff "lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.'" *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1149–50 (9th Cir. 2006) (citing *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (collecting cases)).

In his SAC, Plaintiff still does not allege to have applied for the 2022 Developmental Psychology position.  Instead, Plaintiff again seeks to establish a concrete and particularized injury-in-fact under the doctrines of competitor standing and futility. [1]  For the reasons explained below, the Court finds that Plaintiff has failed to allege new facts to invoke standing under either doctrine.

**1.   Competitor Standing**

Under the competitor standing doctrine, an injury-in-fact can be established by showing the inability to compete on an equal footing in a bidding process, and "[i]t is a plaintiff's ability and readiness to bid that ensures an injury-in-fact is concrete and particular." *Planned*

---

[1] Plaintiff raises no new arguments regarding prudential standing, instead reserving his original argument for appeal in a footnote.  Opp'n 8 n.2.  However, regardless of Plaintiff's argument that prudential standing satisfies Article III's requirement of a "concrete and particularized" injury, as explained below, the Court nevertheless finds that Plaintiff also failed to plead an injury-in-fact that is "actual or imminent."

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
4

1  *Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d
2  1100, 1108 (9th Cir. 2020).  However, this doctrine still "precludes the airing of generalized
3  grievances."  *Id.*  Courts generally define "able" as "qualified," and "ready" as "seeking
4  employment and [being] genuinely interested in the position."  *Bradley v. T-Mobile US, Inc.*, No.
5  17-CV-07232-BLF, 2020 WL 1233924, at *10 (N.D. Cal. Mar. 13, 2020) (collecting cases).

6        In the Prior Order, the Court found that Plaintiff failed to state that he is "ready and able"
7  to apply for a position at UC Santa Cruz for which he is qualified.  Prior Order 6.  Specifically,
8  the only allegation in the FAC that bore on Plaintiff's readiness and ability was that "he desires a
9  position at the University."  *Id.*  The Court found that this bare statement of intent, without more,
10 was insufficient to establish standing.  *Id.* (citing *Carney v. Adams*, 592 U.S. 53, 65–66 (2020)).
11 In addition to a statement of intent, the Court found that Plaintiff needed to allege facts relevant
12 to whether Plaintiff was "ready and able," meaning qualified and having a genuine interest in the
13 position, as described in *Carney*: (1) undertaking preparations in anticipation of applying to the
14 2022 Developmental Psychology position or other employment at UC Santa Cruz, i.e., engaging
15 in any relevant conversations about applying to UC Santa Cruz or making any efforts to
16 determine likely openings at UC Santa Cruz; or (2) previously applying for positions at UC Santa
17 Cruz.  Prior Order 8 (citing *Carney*, 592 U.S. at 65–66).

18       The Court finds that Plaintiff has failed to cure these deficiencies.

19       First, Plaintiff still has not alleged that he undertook any preparations in anticipation for
20 applying to the 2022 Developmental Psychology position.  Instead, Plaintiff argues that he was
21 prepared to apply for the 2022 Developmental Psychology position because he already possessed
22 all the required materials—including a cover letter, research statement, teaching statement, CV,
23 and statement on diversity—and he only had to make minor modifications to his cover letter.
24 Opp'n 6.  However, Plaintiff does not allege that he undertook any preparations *specifically* in
25 anticipation for the 2022 Developmental Psychology position or other employment at UC Santa
26 Cruz.  *See, e.g.*, Compl., Ex. D (application material directed to faculty position in developmental
27 psychology at the University of Southern California).  Being "able and ready" encompasses more

United States District Court
Northern District of California

than merely possessing the required application materials by coincidence. While these materials are relevant to whether Plaintiff was "able" to apply, preparation of application materials to be used to apply for positions at other universities does not demonstrate genuine interest, or "readiness," to work at UC Santa Cruz. Further, beyond the existence of these documents, Plaintiff still has not alleged that he prepared to apply at UC Santa Cruz in other ways, i.e., conversations about the 2022 Developmental Psychology position, research into the 2022 Developmental Psychology position, or efforts to determine other open positions at UC Santa Cruz. *See Carney*, 592 U.S. at 65–66.

Second, Plaintiff has not alleged, and does not argue, that he applied for positions at UC Santa Cruz previously. The only new fact addressing past applications is Plaintiff's allegation that he previously applied to ten jobs in California in 2023. *See* Opp'n 7. However, applying for other unidentified jobs in this state carries little relevance to whether Plaintiff was qualified for and interested specifically in the 2022 Developmental Psychology position or other employment at UC Santa Cruz. Further, the vague timeframe prevents the Court from being able to discern whether any of these applications were entered prior to initiating this lawsuit.

Third, the Court is unpersuaded by Plaintiff's argument that the following allegations are sufficient to show his genuine interest: his job search is directed toward places he wants to live and work; he wants to live and work in the state of California; and his research interests "dovetail" with the 2022 Developmental Psychology position. Opp'n 7. As the Court indicated in its Prior Order, the fact that "Plaintiff is generally in the national market for a position in the academy is not sufficiently imminent or concrete to establish an injury-in-fact arising from UC Santa Cruz's specific application process." Prior Order 8. Plaintiff now more narrowly alleges that he is in the market for a position in the academy that fits his interest in California; however, this is still insufficient to establish a genuine interest in the 2022 Developmental Psychology position or other employment at UC Santa Cruz.

Finally, the Court observes that the SAC no longer alleges that Plaintiff even desired the 2022 Developmental Psychology position or other employment at UC Santa Cruz. In amending

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
6

his FAC, Plaintiff affirmatively removed the one statement that previously expressed his interest in applying—"he desires a position at the University." *Compare* FAC ¶ 69, *with* SAC ¶ 89. The Court previously found this statement of intent alone insufficient to establish a concrete and particularized injury and held that Plaintiff was required to plead facts *in addition* to this statement. Prior Order 8. Now, the SAC has neither.[2] The Court accepts the facts alleged in Plaintiff's complaint as true and draws all reasonable inferences in his favor, but the Court cannot insert facts for Plaintiff that he has not alleged.

Accordingly, the Court finds that Plaintiff has failed to cure the deficiencies previously identified in his competitor standing theory.[3] Even if the SAC still included a statement of interest, this statement would again not meet the threshold of factors referenced in *Carney*—it would still "stand alone without any actual past injury, without reference to an anticipated timeframe, without prior [] applications [to UC Santa Cruz], without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting [allegations]." *Carney*, 592 U.S. at 65.

### 2. Futility

Under the doctrine of futility, a plaintiff does not need to translate their desire for a job into a formal application to establish standing where doing so would unambiguously render the application futile. *Carney*, 592 U.S. at 66; *Pizzo v. City & Cnty. of San Francisco*, No. C 09-4493 CW, 2012 WL 6044837, at *15 (N.D. Cal. Dec. 5, 2012).

In the Prior Order, the Court found that Plaintiff failed to plead facts showing that the DEI statement requirement "unambiguously rendered his application futile." Prior Order 11. The Court found this case analogous to *Friery*, 448 F.3d at 1149. There, the Ninth Circuit found that a school district's policy forbidding faculty transfers that would move the destination school's

---

[2] Plaintiff's argument in his opposition that that he had a "very real" interest in the job and would have applied absent the requirement to submit a statement on his contributions to DEI does not reference any allegation in the SAC. *See* Opp'n 1.

[3] The Court need not address Defendants' arguments regarding whether Plaintiff's invocation of the competitor standing doctrine is inapposite given the Court's finding that the doctrine is not, in any event, satisfied.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS

7

1   overall ratio of white faculty to nonwhite faculty did not render the plaintiff's transfer application

2   futile because "the school might have accepted his application on the basis of dire need, excellent

3   qualifications, or any other reason." *Id.*

4       Plaintiff made no attempt to distinguish this case from *Friery* in the opposition, instead

5   only arguing that *Friery* did not apply to his competitor standing theory.[4]  Opp'n 7–8.  Plaintiff

6   does, however, highlight two new facts in the SAC to suggest that futility excused the general

7   requirement that he apply for the 2022 Developmental Psychology position.  First, a self-reported

8   study revealed that 76% of applicants to UC Berkeley, one of UC Santa Cruz's sister schools that

9   uses the same DEI statement rubric as UC Santa Cruz, were eliminated based on their diversity

10  statements alone.  Opp'n 12.  Second, although he uses this fact primarily in his competitor

11  standing arguments, Plaintiff alleges that he has submitted statements describing his contributions

12  to DEI to other schools in the past, attaching an example statement to the SAC.  Plaintiff uses this

13  to argue that his application would be futile given the stark differences between his statement and

14  the materials and guidance offered by UC Santa Cruz.  *Id.* at 11, 12.

15      The Court finds that Plaintiff has still failed to plead facts showing how this case "falls

16  within that small class of cases where a formal application is unnecessary on the ground of

17  futility." *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1222 (9th Cir. 1992).

18      First, the self-reported study showing that 76% of applicants at a sister school using the

19  same rubric were rejected based solely on their DEI contributions does not render his application

20  to UC Santa Cruz futile.  Even if this study was conducted at UC Santa Cruz and produced the

21  same results, there would still be a 24% chance that he would not have been rejected based solely

22  on his DEI statement—rendering his application far from unambiguously futile.  *See, e.g.,*

23  *Friery*, 448 F.3d at 1149.

24      Second, and similarly, while Plaintiff clearly alleges that consideration of the DEI

---

[4] Although Plaintiff again does not directly contend that he should be excused from applying for standing purposes because any application would have been futile, he raises futility in other sections of the opposition and in the SAC, so the Court again addresses it here. *See* Prior Order 10.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
8

contributions statement is an important factor in the screening process, Plaintiff's assertion that it is the *only* factor is contradicted by his own allegations. *See, e.g.,* Compl. ¶¶ 29 (alleging that the University emphasized that the statement on contributions to DEI is "an '*important part*' of the selection process, which must be considered in the first round of review") (emphasis added), 82 (alleging that UC Santa Cruz's Psychology Department "makes clear that, consistent with University policy, an initial screening of candidates will be performed using only the DEI statement *and a research statement*") (emphasis added), 92 (alleging that UC Santa Cruz uses DEI statements "*as part* of the initial screening process") (emphasis added); *see also, id.* ¶¶ 25, 26, 33 (alleging that UC Santa Cruz mirrored their program after UC Riverside, which saw a ten-fold increase in underrepresented minority finalists and a doubling of female representation after the university started evaluating "DEI statements from the beginning of the candidate evaluation process and *as part* of the initial candidate screening") (emphasis added); *contra id.* ¶ 33 (alleging that UC Santa Cruz "perform[s] an initial screening of candidates *based only on diversity statements*," similar to the program at UC Riverside) (emphasis added).

Plaintiff's own allegations demonstrate that UC Santa Cruz does not ignore the academic and research accomplishments of their applicants in the screening phase. Every university seeks to hire applicants with a high level of academic achievement. Screening candidates using both the research and DEI statement in tandem provides UC Santa Cruz the ability to give greater weight to an applicant's academic proficiency than in their DEI statement. In this way, the chance that UC Santa Cruz could have advanced Plaintiff's application based on the academic excellence expressed in his research statement distinguishes this case from others where courts have applied the narrow futility exception. *See Pizzo*, 2012 WL 6044837, at *15 (collecting cases) (citing *Taniguchi v. Schultz*, 303 F.3d 950, 950 (9th Cir. 2002) ("[T]he [challenged] statute unambiguously precludes Taniguchi, as [a lawful permanent resident] convicted of an aggravated felony, from the discretionary waiver. To apply for the waiver would have been futile on Taniguchi's part and, therefore, does not result in a lack of standing."); *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir.1996) ("Applying for a permit

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
9

would have been futile because: (1) the City brought state court actions against [the plaintiffs] to compel them to remove their signs; and (2) the ordinance flatly prohibited [the plaintiffs'] off-site signs[.]"); *Dragovich v. United States Dep't of the Treasury*, 764 F.Supp.2d 1178, 1185 (N.D. Cal. 2011) (same sex couple was not required to submit an application for state-maintained long-term care insurance plan in order to establish standing where the government agency made abundantly clear in written and oral communications that their applications would be rejected and the relevant laws "plainly result" in the exclusion of same sex couples)).  Accordingly, the Court need not engage in the speculative task of examining whether Plaintiff's DEI statement would have satisfied UC Santa Cruz because Plaintiff's factual allegations show it was possible he could have proceeded past the screening process upon consideration of the strength of his research statement.

\* \* \*

Therefore, the Court finds that Plaintiff has again failed to plead facts sufficient to show a concrete and particularized injury-in-fact.  Indeed, Plaintiff failed to reference any case in the country where a court found an injury-in-fact based on facts such as these.  *See* Opp'n 5–12 (citing *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 690, 93 (1973) (discussing standing to sue for environmental harms, with no discussion of competitor standing doctrine or futility); *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 874 (9th Cir. 1995) (finding the plaintiff ready and able to bid for a contract because he had previously worked with the business, declared his "earnest desire" to reinstate his business relationship, and submitted a letter from the business indicating that it was pleased with his past work); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (not discussing whether the plaintiff was "ready and able," but nevertheless, the plaintiff submitted a bid in the past)); *see also* Prior Order 6 (distinguishing facts from *Planned Parenthood*, 946 F.3d 1100)..

### B. Actual or Imminent

Even if Plaintiff cured the deficiencies identified above, the SAC still fails to plead an injury that is actual or imminent.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
10

1   "Past exposure to illegal conduct does not in itself show a present case or controversy

2   regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

3   *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "'[S]ome day' intentions—without any

4   description of concrete plans, or indeed even any specification of when the some day will be—do

5   not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of*

6   *Wildlife*, 504 U.S. 555, 564 (1992).

7   In the Prior Order, the Court found that Plaintiff failed to identify allegations of an actual

8   or imminent injury. The Court again turned to the considerations the Supreme Court discussed in

9   *Carney* and found that Plaintiff failed to allege that he had an anticipated timeframe for his injury

10  or that there were regular opportunities available with relative frequency. Prior Order 7.

11  Specifically, the Court found Plaintiff's argument that the "University is constantly hiring and

12  will inevitably post (another) job opening that Dr. Haltigan is qualified for" was "the type of

13  floating 'some day' speculation that does not support a finding of 'actual or imminent' injury"

14  under *Lujan*. *Id.*

15  Plaintiff newly alleges that "UC Santa Cruz posts similar openings in the psychology

16  department on an annual basis," as shown by a recent September 1, 2023, hiring announcement

17  for an assistant or associate professor in Quantitative Psychology ("2023 Quantitative Psychology

18  position"). SAC ¶ 85. Plaintiff also alleges that he "expects the University to continue posting

19  job opportunities that he is interested in going forward." *Id.* ¶ 88.

20  The Court finds these allegations insufficient to show an imminent injury.

21  First, Plaintiff does not explain how the recently posted 2023 Quantitative Psychology

22  position aligns with his interests. Plaintiff's expertise is in Developmental Psychology, and his

23  interests include the legacy of early caregiving experiences on child and adolescent environment,

24  life history, measurement and classification of child and adolescent psychopathology, and

25  longitudinal data modeling. *Id.* ¶¶ 3, 7, 68, 70. But the 2023 Quantitative Psychology posting

26  does not list any of these areas of interest in its description. *Id.*, Ex. H. The Court also observes

27  that Plaintiff never actually alleged that he wanted to apply to the 2023 Quantitative Psychology

28  Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
11

position.

Second, Plaintiff has not alleged facts sufficient to show that he is qualified for the 2023 Quantitative Psychology position. Plaintiff's only teaching experience is in undergraduate academia, but the 2023 Quantitative Psychology position requires that candidates such as Plaintiff, who do not have a PhD in Quantitative Psychology, must have "demonstrated excellence in teaching statistics at the graduate and undergraduate levels." *Id.*, Ex. A, C, H. Plaintiff offers no response to this requirement other than notably excising "at the graduate and undergraduate levels" from the end of the sentence in his opposition. Opp'n 7 n.1 ("The University asserts, without evidence, that Dr. Haltigan is not qualified for this position. MTD at 13. But Dr. Haltigan is currently teaching undergraduate statistics and the position asks only for a candidate with 'expertise in quantitative methods and demonstrated excellence in teaching statistics.' SAC Ex. H. Dr. Haltigan meets this minimum qualification. SAC ¶¶ 84−88."). Thus, he appears to lack the graduate teaching requirement for this position.

Third, considering that the 2023 Quantitative Psychology position does not align with Plaintiff's interests or qualifications, the allegation that UC Santa Cruz posts similar openings on an annual basis does not show that there are regular, relatively frequent job opportunities UC Santa Cruz for which he is qualified.

Finally, Plaintiff alleges he is in the market for "a tenure track position at a university," not a temporary or short-term position. SAC ¶ 59. Defendants argued the fact that UC Santa Cruz recently hired a tenure-track professor in Developmental Psychology makes it *less likely* that it will hire for this same subspecialty imminently. Mot. 9. Plaintiff failed to respond to or acknowledge this argument.

Absent the new 2023 Quantitative Psychology position, the only allegation remaining is that Plaintiff "expects the University to continue posting job opportunities that he is interested in going forward." SAC ¶ 88. For all the reasons discussed in the Prior Order, the Court finds this insufficient to establish standing. Accordingly, the Court finds that Plaintiff has again failed to plead facts sufficient to show an actual or imminent injury-in-fact.

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
12

**C.    Leave to Amend**

Plaintiff has now amended his complaint three times. In the Prior Order, the Court explicitly outlined the reasons why Plaintiff failed to plead a "concrete and particularized" and "actual or imminent" injury-in-fact. But when given another opportunity, Plaintiff failed to cure the exact deficiencies identified by the Court.

The Court held that Plaintiff needed to allege facts relevant to whether he was "ready and able." Prior Order 8. The Court specifically referenced the facts discussed in *Carney* for guidance. *Id.* (citing *Carney*, 592 U.S. at 65–66). Plaintiff failed to cure this deficiency.

The Court held that Plaintiff needed to allege facts showing how UC Santa Cruz's requirement to submit a statement on contributions to DEI "unambiguously rendered his application futile." Prior Order 11. The Court specifically referenced *Friery* for guidance. *Id.* (citing *Friery*, 448 F.3d at 1147–48). Plaintiff failed to distinguish this case from *Friery* or otherwise cure this deficiency.

The Court held that Plaintiff needed to allege facts relevant to whether his injury is actual or imminent, again bringing to Plaintiff's attention the examples discussed in *Carney*. Prior Order 7 (citing *Carney*, 592 U.S. at 66). Plaintiff failed to cure this deficiency.

Ultimately, the SAC still fails to establish any exception to the "long-established rule" that a plaintiff "lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.'" *Friery*, 448 F.3d at 1149–50 (9th Cir. 2006) (citing *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (collecting cases)).

Plaintiff's failure to plead necessary facts explicitly identified by the Court leads the Court to believe that these facts do not exist. However, the Court will once again provide Plaintiff the opportunity to cure the deficiencies in his complaint, noting that four attempts may fulfill what justice requires in this case. Fed. R. Civ. P. 15(a) (providing that a trial court shall grant leave to amend freely "when justice so requires"); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[W]e have repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

1  possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss for lack of jurisdiction with leave to amend. Should Plaintiff wish to file an amended complaint, he must do so by December 6, 2024.

**IT IS SO ORDERED.**

Dated: November 15, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:23-cv-02437-EJD
ORDER GRANTING MOTION TO DISMISS
14